RICHARDS & COMPANY, INC., Respondent, *v.* LEO WRESCHNER and Others, Doing Business under the Name and Style of BEER, SONDHEIMER & COMPANY, and BEER, SONDHEIMER & COMPANY, AMERICAN BRANCH, Appellants.

First Department, May 5, 1916.

Contracts — breach of contract by German firm to deliver merchandise — defense — impossibility of performance due to European war or to foreign law no excuse — construction and effect of contract governed by law of this country.

A German copartnership which contracted in this State to deliver at New York or Boston "during the months of February to September, 1914," merchandise manufactured only by a Belgian corporation, is not excused

from performance of its contract because of the interference with the source of supply or with the opportunity for shipment by reason of the existence of a state of war between Germany and Belgium, nor because of the subsequent illegality of shipment by reason of the proclamation of the German government prohibiting the exportation of the merchandise contracted for, where it does not appear that said copartnership could not have guarded against the very contingency which has arisen.

Impossibility of performance of a contract due to a foreign law is no excuse.

As the contract was entered into in New York and was to be performed in this country, its nature, validity, obligation and legal effect must be determined by the *lex loci contractus.*

Effect will not be given to foreign laws in derogation of the contracts or prejudicial to the rights of citizens.

APPEAL by the defendants, Leo Wreschner and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of November, 1915, upon the decision of the court, a jury having been waived.

*Carl M. Owen,* for the appellants.

*Roger Sherman,* for the respondent.

Judgment affirmed, with costs, on opinion of WEEKS, J.

Present— CLARKE, P. J., McLAUGHLIN, LAUGHLIN, SMITH and PAGE, JJ.

The following is the opinion of Mr. Justice WEEKS:

WEEKS, J.:

This case presents the interesting question of whether or not the defense of impossibility of performance, which is claimed to have arisen from European war conditions, will excuse the obligor, a German copartnership, from the breach of an unconditional contract made in New York and providing for performance in this country. The plaintiff claims damage in the sum of $3,460.80 by reason of defendants' failure to deliver the last two shipments pursuant to the following contract:

" Office, 81 Fulton Street, New York, January 28th, 1914. Beer, Sondheimer & Company, New York, agree to sell, and Richards & Company, Boston, Mass., agree to buy, one hundred

twenty (120) tons (2,240 pounds each) Belgium H. H. anti-
mony for shipment from Europe at the rate of fifteen (15) tons
per month during the months of February to September, 1914,
inclusive, at five and thirty-five hundredths (5.35c.) cents per
pound; delivered c. i. f. New York or Boston, buyers' option.
Terms: Cash against documents on arrival of vessel. No arri-
val, no sale. Buyers to be advised name (and) or names of ves-
sels while antimony is still afloat. C. S. Trench & Co., C. J.
Trench, Brokers. O. K. A. T. W. Accepted: Beer, Sond-
heimer & Co., American Branch. (Signature illegible in origi-
nal.) (Sellers' signature.) "

The controversy is submitted upon a stipulation between the
parties which may be summarized as follows: That if plaintiff
recovers, the amount due is conceded to be the amount demanded
in the complaint; that the subject-matter of the contract, Bel-
gium H. H. antimony, is a specific and well-known brand
manufactured only by the Compagnie Metallurgique de la
Companie, a Belgian corporation, having a factory at Beerse,
Belgium, and that said antimony is a particular product of that
particular factory, and that all production of Belgian H. H.
antimony ceased because of the closing down of this factory
under stress of the German invasion of Belgium, and that since
July 31, 1914, all exportation of antimony over the frontier of
the German Empire was forbidden by the German government.

Although the parties have further stipulated that defend-
ants could present proof that they had no warehouses
for the storage of this antimony and that they sup-
plied their customers by direct shipments from the said
factory or from their principal office at Frankfort-on-Main,
Germany, and that by reason of the declaration of war
between Germany and Belgium on or about July 31, 1914,
the defendants became enemies of the Kingdom of Bel-
gium, and commercial intercourse by them with the inhabit-
ants or industries thereof became, under the laws of the Ger-
man government, illegal and prohibited, and further
performance of the contract by the defendants was rendered
impossible, it does not appear that the defendants could not
have guarded against the very contingency which has arisen
by providing themselves with a sufficient supply of antimony

to make deliveries during the last two months of the contract by shipments from some port in Europe, nor does it appear that they could not have procured the antimony from a warehouse in some non-belligerent country of Europe, and it is obvious that the defendants were improvident in entering into a contract of this kind without inserting a condition covering the interference of war, strikes or other causes beyond their control.

The most recent statement of the law applicable to this case is to be found in *Cameron-Hawn Realty Co.* v. *City of Albany* (207 N. Y. 377, 381), as follows: "It is a well-settled rule of law that a party must fulfill his contractual obligations. Fraud or mutual mistake, or the fraud of one party and the mistake of the other, or an inadvertence induced by the one party and not negligence on the part of the other, may relieve from an expressed agreement, and an act of God or the law or the interfering or preventive act of the other party may free one from the performance of it; but if what is agreed to be done is possible and lawful the obligation of performance must be met. Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse non-performance. The courts will not consider the hardship or the expense or the loss to the one party or the meagreness or the uselessness of the result to the other. They will neither make nor modify contracts nor dispense with their performance. When a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications. (*Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*, 25 N. Y. 272; *Ward* v. *H. R. Bldg. Co.*, 125 N. Y. 230; *Soley & Sons* v. *Jones*, 208 Mass. 561; *Rowe* v. *Peabody*, 207 Mass. 226; *School District No. 1* v. *Dauchy*, 25 Conn. 530; *School Trustees of Trenton* v. *Bennett*, 27 N. J. L. 513.) There are classes of cases in which this principle is not applied. It is not applied to executory contracts for personal services (*Wolfe* v. *Howes*, 20 N. Y. 197; *Spalding* v. *Rosa*, 71 N. Y. 40), nor for the sale of specific chattels (*Dexter* v. *Norton*, 47 N. Y. 62; *Dolan* v.

*Rodgers*, 149 N. Y. 489), nor for the use of particular buildings (*Taylor* v. *Caldwell*, 3 Best & Smith, 826). There is in the nature of contracts of those classes an implied condition that if the person or thing shall not be in existence at the time stipulated for performance it shall not be required. And in the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part. (*Patterson* v. *Meyerhofer*, 204 N. Y. 96.) "

The claim of the defendants that they are excused from performance because of the interference with the source of supply or with the opportunity for shipment by reason of the existence of a state of war between Germany and Belgium, and also because of the subsequent illegality of shipment by reason of the proclamation of the German government prohibiting the exportation of the merchandise contracted for, cannot be sustained.

It is well settled that impossibility due to a foreign law is no excuse. (*Barker* v. *Hodgson*, 3 M. & S. 267; *Spence* v. *Chodwick*, 10 Q. B. [A. & E. N. S.] 517; *Kirk* v. *Gibbs*, 1 H. & N. 810; *Clifford* v. *Watts*, L. R. 5 C. P. 577; *Cunningham* v. *Dunn*, L. R. 3 C. P. Div. 443; *Jacobs* v. *Credit Lyonnais*, L. R. 12 Q. B. Div. 589; *Ashmore & Son* v. *Cox & Co.*, L. R. [1899] 1 Q. B. Div. 436; *Tweedie Trading Co.* v. *McDonald Co.*, 114 Fed. Rep. 985; *Beebe* v. *Johnson*, 19 Wend. 500.)

In *Ashmore & Son* v. *Cox & Co.* (*supra*) the defendants agreed to sell to the plaintiffs 250 bales of Manila hemp at a stipulated price, to be shipped by " sailer or sailers " from a port in the Philippines between specified dates. The outbreak of the Spanish-American war prevented shipment between those dates, but defendants made a subsequent shipment by steamer, which was tendered and, as the court held, properly refused, Lord RUSSELL, C. J., saying: " On behalf of the defendants it was also contended that they were excused from the fulfillment of the contract on the ground of impossibility of performance of it. This contention was divided into two heads. First, it was said that it was an implied condition of the contract and therefore not depending upon the express words of the contract,

that it should be possible to ship between the named dates by sailer or sailers. In support of that contention one or two cases were cited, the principal being *Howell* v. *Coupland* (L. R. 1 Q. B. Div. 258). In my judgment that case is no authority for the proposition here contended for; it turned upon the construction of the contract in that case. * * * Here the stipulations are that the defendants shall sell 250 bales of hemp; that the shipment shall be made from the Philippine Islands, that it shall be made by sailer or sailers, that it shall be made between the named dates, and that the declaration shall be made in the manner provided by the contract. The defendants have taken upon themselves the absolute responsibility of being able to make a declaration complying with the contract and appropriating to the contract 250 bales of the commodity shipped by sailer or sailers between May 1 and July 31, 1898. They have taken upon themselves (subject to the concluding clause of the contract) the responsibility that those events shall take place, or that they will pay damages if from any cause they are prevented from carrying out the contract. I therefore hold that there was no such implied condition."

In *Jacobs* v. *Credit Lyonnais*, [1884], (*supra*), where the action was upon a contract for the shipment of esparto from Algiter for delivery in England, which was prevented by a war in Algiers, it was held that although a war was a defense under the French law it did not apply to an English contract.

In *Tweedie Trading Co.* v. *McDonald Co.* (*supra*) libellant entered into a contract in the United States to make four trips with its steamship from Barbadoes to Colon to transport laborers, but after two trips had been made a regulation of the colonial government of Barbadoes was promulgated forbidding the future embarkation of laborers, by reason of which defendant was unable to furnish any more for transportation, and it was held that such embargo did not constitute a defense to an action to recover the hire of the ship for the remaining voyages at the contract price, the court saying: "The question really is, do the legal acts of the agents of a foreign government which prevent the full performance of a contract of this character control the rights of the parties? Contracting parties are subject to the contingencies of changes in their own law and liable

to have the execution of their contracts prevented thereby; but it is on the ground of illegality, not of impossibility.  Prevention by the law of a foreign country is not usually deemed an excuse when the act which was contemplated by the contract was valid in view of the law of the place where it was made [citing cases] and, *a fortiori*, when it was also then valid at the place of performance."

In *Barker* v. *Hodgson* (*supra*), where the defendant was unable to send a cargo by reason of an embargo imposed by the port authorities due to the breaking out of a pestilence at Gibraltar, Lord Ellenborough said: "If indeed the performance of this covenant had been rendered unlawful by the government of this country, the contract would have been dissolved on both sides, and this defendant, inasmuch as he had been thus compelled to abandon his contract, would have been excused for the non-performance of it and not liable to damages.  But if, in consequence of events which happen at a foreign port, the freighter is prevented from furnishing a loading there, which he has contracted to furnish, the contract is neither dissolved nor is he excused for not performing it, but must answer in damages."

So, also, the refusal of the authorities to permit a vessel to receive a cargo on board has been held not to excuse an absolute engagement to take it.  (*Holyoke* v. *Depew*, 2 Ben. 334.)

And in the case of *Spence* v. *Chodwick* (*supra*) it was said that seizure and confiscation of goods in transit on board a ship in a foreign port on the ground that they were contraband goods, would not relieve a carrier from an express contract to carry and deliver them.

Again, in *Hore* v. *Whitmore* (2 Cowp. 784) the court held that an embargo would not relieve from an express warranty that a ship would sail on or before a certain day, and in *Atkinson* v. *Ritchie* (10 East, 530) it was held that a hostile embargo did not relieve from liability for breach of an express contract to load a vessel.

Under the provision in the contract of "no arrival, no sale," title remained in the seller until delivery.  (*Abe Stein Co.* v. *Robertson*, 167 N. Y. 101.)  The contract was entered into in New York and was to be performed in this country, and the nature,

validity, obligation and legal effect of the contract must be determined by the *lex loci contractus,* and effect will not be given to foreign laws in derogation of the contracts or prejudicial to the rights of citizens. (*Dike* v. *Erie R. Co.,* 45 N. Y. 113.)

It follows that there must be judgment for the plaintiff for $3,460.80, with interest, as demanded in the complaint. Submit findings and decision.