ISAAC KRULEWITCH, Appellant, v. THE NATIONAL IMPORTING AND TRADING CO., INC., Respondent.

First Department, March 4, 1921.

Sales — embargo by foreign governmental authority is no defense in an action for failure to deliver goods — mistake as to shipping conditions — prohibition of War Trade Board not effective after expiration of contract period.

In the midst of the World War the seller, doing business in a foreign country, contracted to sell and deliver goods, between certain dates, " ex dock, N. Y." The contract, among other things, provided that the " sellers are not responsible for strikes, fires, accidents or anything beyond their control." Embargoes were imposed by the seller's government prior to the time the contract was made and continued until upwards of a month subsequent to the time when the contract was to have been performed.

*Held,* that a contract must be rendered unlawful by a law effective in the forum, and, hence, foreign laws or embargoes would not furnish an excuse for the failure to make delivery, especially under allegations of the absence of direct transportation between the initial and terminal points.

Nor, under the circumstances, was there such a mistake as to shipping conditions as would move a court of equity to grant relief.

A defense setting up the prohibition of the War Trade Board is insufficient where it appears that the prohibition did not become effective until after the contract period had expired.

APPEAL by the plaintiff, Isaac Krulewitch, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 14th day of July, 1920, overruling plaintiff's demurrer to the affirmative defenses contained in the third amended answer.

*David Vorhaus* of counsel [*Joseph Fischer* with him on the brief; *House, Grossman & Vorhaus,* attorneys], for the appellant.

*John L. Clark,* for the respondent.

PAGE, J.:

The second amended answer contained three separate defenses. Demurrers to these defenses on the ground of insufficiency were sustained at Special Term and the order was affirmed with leave to the defendant to plead over. (191 App. Div. 904.) Pursuant to the leave thus given the defendant served a third amended answer containing five separate defenses, three of which are substantially the same as those contained in the second answer. The changes in the phraseology are not sufficient to remove the defects found in the same defenses in the second answer. The contract in this case was dated March 1, 1918, and thereby the defendant sold to the plaintiff certain tapioca flour " price 7⅜c per lb. ex dock N. Y. Shipment from Java Feb/Mch. * * * Remarks: These goods are bought with the understanding * * * that sellers are not responsible for strikes, fires, accidents or anything beyond their control."

The theory of the three defenses is that there was a suspension of direct transportation between Java and New York, owing to embargoes imposed by the governmental authorities

of Java prior to February 1, 1918, and continuing until after April 30, 1918; that both parties to the contract assumed that shipments could be made from Java to New York, and that because the defendant was prevented from shipping the flour by something beyond its control, and the contract was entered into because of a mutual mistake, performance by the defendant was excused.

It is a well-settled rule that " where certain things are enumerated, and such enumeration is followed or coupled with a 'more general description, such general description is commonly understood to cover only things *ejusdem generis* with the particular things mentioned." ' (*Matter of Robinson,* 203 N. Y. 380, 386.) This is not a rule limited to the construction of statutes, but is also applied in construing contracts. (*Bers* v. *Erie R. R. Co.,* 225 N. Y. 543; *Davids Co.* v. *Hoffmann-LaRoche Chemical Works,* 178 App. Div. 855; *Traylor* v. *Crucible Steel Co.,* 192 id. 445, 449; *Hickman* v. *Cabot,* 183 Fed. Rep. 747, 749.) It is clear that a lack of transportation facilities, unless occasioned by strikes, fires or accidents, or some similar cause beyond the control of the defendant, was not provided against by the terms of this contract. The defendant undertook to sell goods which either had been shipped in February or would be shipped in March. Before entering upon this understanding it was incumbent on the defendant to ascertain whether goods had been or would be shipped within the contract time. The contract was not entered into before the commencement of the war. The World War had been raging for nearly four years. Interference with the commerce of the world and the ordinary facilities of obtaining and transporting merchandise was well known. Nevertheless, the defendant bound itself to sell and deliver this particular merchandise during a limited period and did not shield itself by proper conditions or qualifications from the effects of that war upon its engagement. (*Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377, 382; *Richards & Co., Inc.,* v. *Wreschner,* 174 App. Div. 484, 487.) The defendant has not alleged an impossibility of performance; all that it has alleged is the absence of direct transportation from Java to New York. It has not alleged the lack of facilities to transport the goods to other ports, between which and New York

shipping facilities existed.   Therefore, although it has alleged a difficulty of performance it has not alleged facts tending to show an impossibility of performance.

" It is a well-settled rule of law that a party must fulfill his contractual obligations.   Fraud or mutual mistake, or the fraud of one party and the mistake of the other, or an inadvertence induced by the one party and not negligence on the part of the other, may relieve from an expressed agreement, and an act of God or the law or the interfering or preventive act of the other party may free one from the performance of it; but if what is agreed to be done is possible and lawful the obligation of performance must be met.   Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor.   It must be shown that the thing cannot by any means be effected.   Nothing short of this will excuse non-performance.   The courts will not consider the hardship or the expense or the loss to the one party, or the meagreness or the uselessness of the result to the other.   They will neither make nor modify contracts nor dispense with their performance.   When a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications." (*Cameron-Hawn Realty Co.* v. *City of Albany, supra,* 381.)   A contract must be rendered unlawful by a law effective in the forum; foreign laws or embargoes do not furnish an excuse.   (*Richards & Co., Inc.,* v. *Wreschner, supra.*)

Nor was there such a mistake as would move a court of equity to grant relief.

The availability of transportation facilities was a matter extrinsic to the contract; it did not concern the plaintiff; he agreed to pay for the goods at the dock in New York; how they were to be brought there was no part of his concern, except as to the limitation as to time.   It was not an element of the contract, but a matter for the defendant to consider before it made the contract.   " There are many extrinsic facts surrounding every business transaction which have an important bearing and influence upon its results.   Some of them are generally unknown to one or both of the parties, and if known might have prevented the transaction.   In such cases, if a

court of equity could intervene and grant relief, because a party was mistaken as to such a fact which would have prevented him from entering into the transaction if he had known the truth, there would be such uncertainty and instability in contracts as to lead to much embarrassment. As to all such facts, a party must rely upon his own circumspection, examination and inquiry; and if not imposed upon or defrauded, he must be held to his contracts. In such cases, equity will not stretch out its arm to protect those who suffer for the want of vigilance." (*Dambmann* v. *Schulting*, 75 N. Y. 55, 64.)

As to the defense setting up the prohibition of the War Trade Board it is sufficient to say that as alleged such prohibition did not become effective until after the contract period had expired, and expressly excepted shipments of such flour made from some foreign port on or before April 15, 1918.

The order should be reversed, with ten dollars costs and disbursements, and the demurrers sustained, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and demurrers sustained, with ten dollars costs.