### P. N. GRAY & CO., Inc., v. CAVALLIOTIS.

(District Court, E. D. New York. November 23, 1921.)

1. Parties ⬅7(2)—Agent in whose name contract is made may sue thereon as trustee of express trust.

Under Code Civ. Proc. N. Y. § 449, an action on a contract for the sale of merchandise to plaintiff, reciting that it was "acting as agent" for a named principal, and signed by plaintiff, held properly brought by plaintiff in its own name as "trustee of an express trust."

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Assignments ⟐97—Assignor contracts that he will do no act to deprive assignee of benefit of thing assigned.**

By an assignment of a contract the assignor contracts that he will do no act to deprive the assignee of his rights under the assigned contract.

**3. Judgment ⟐250—Plaintiff entitled to relief, if complaint states good cause of action on any theory.**

A plaintiff is entitled to relief on any theory on which his complaint states a good cause of action.

**4. Contracts ⟐314—Party who puts it out of his power to perform is liable for damages caused thereby.**

Where one party to an executory contract prevents its performance, or puts it out of his power to perform it, the other party may regard it as terminated and recover whatever damage he has sustained thereby.

**5. Sales ⟐172—Embargo by foreign government does not excuse nonperformance of contract.**

For a government embargo on the exportation of a commodity to excuse nonperformance of a contract requiring such exportation, the embargo must be by the government of the country where the contract is made and to be performed.

**6. Sales ⟐172—Government embargo held not to relieve party from performance of contract.**

Where a contract by a Canadian refinery for the sale of a large quantity of sugar, to be delivered in New York, reserved the right to fill the contract from its New York refinery, the placing of an embargo by the Canadian government on the exportation of sugar *held* not to relieve the seller from the obligation of the contract.

**7. Estoppel ⟐63—Party who voluntarily put it out of his power to perform cannot set up embargo as defense to action for breach.**

Where defendant, who had contracted for a purchase of sugar from a Canadian refinery, contracted for a resale of the sugar to plaintiff, but afterward for a large consideration released the Canadian company from its contract and thus put it out of his power to perform his contract with plaintiff, he cannot set up as a defense to an action for its breach that shipment by the Canadian company was prevented by a government embargo.

At Law. Action by P. N. Gray & Co., Inc., against Michael N. Cavalliotis, trading as the Ægean Trading Company. Trial to court. Judgment for plaintiff.

Shattuck, Glenn & Ganter, of New York City (Garrad Glenn, Wm. B. Walsh, Frederic C. Pitcher, and J. Steward Crawford, all of New York City, of counsel), for plaintiff.

Walter F. Welch, of New York City (Vincent P. Donihee, of Brooklyn, N. Y., of counsel), for defendant.

COOPER, District Judge. This is an action upon contract, tried by the court; a jury trial having been waived. Two main questions are presented, viz.: Whether plaintiff has an action upon the particular contract; and, second, whether he has brought the right one.

[1] The plaintiff is in the export trade, and acts as agent for foreign principals in the purchase and shipment of various commodities. The defendant is engaged in a general trading and export business in New York City. On August 22, 1919, the defendant entered into a contract with the Dominion Sugar Company, Limited, of Ontario,

Canada, for the purchase of 2,000 tons of standard cane refined granulated sugar, American style, at price of 9½ cents per pound, f. a. s. steamer New York City.

Subsequent thereto, and on the 22d of October, 1919, the plaintiff, as agent for Picard & Co., of Zurich, Switzerland, made a contract with the defendant; that portion thereof essential to this controversy being as follows:

"Michael N. Cavalliotis, trading under the registered name, the Ægean Trading Company, of 120 Liberty street, New York, N. Y., has this day sold to P. N. Gray & Co., Inc., of 6 Hanover street, New York, N. Y., acting as agents for Picard & Co., Limited, of Chatham, Ontario, to be placed in escrow in Irving National Bank, as per offer made by the Ægean Trading Company on the 18th of October, seventeen hundred fifty (1,750) tons of standard cane refined granulated sugar at the price of 10.50 cents per pound net cash in New York funds, in bond, f. a. s. steamer New York. * * *"

The Dominion Company had no knowledge of this agreement. A long exchange of correspondence followed between the defendant and the Dominion Sugar Company, and the latter complained that because of Canadian embargo it could not make deliveries. The defendant stated to the plaintiff that he could get a release of his contract with the refinery at a profit of 1½ cents per pound, and of this amount he would pay the plaintiff one-half cent per pound. This was not satisfactory to the plaintiff, and the defendant on January 29, 1920, without the knowledge or consent of the plaintiff, entered into an agreement with the Dominion Company, whereby the contract between the defendant and the Dominion Company was abrogated and fully discharged. Cavalliotis received as consideration for such release the sum of $84,800, at the rate of 2 cents per pound, apparently endeavoring to make a greater profit that he cared to disclose to the plaintiff.

From the Dominion Company's New York representative the plaintiff learned of the defendant's arrangement with the Dominion Company, and it immediately made a demand upon defendant for the delivery of the sugar, or else to pay over the difference between the contract and market price, and upon refusal this suit followed. The facts were substantially all conceded.

The contract is signed, "P. N. Gray & Co., Inc., by Wallace H. Foster, Secretary," and objection is made upon the trial that the plaintiff, as agent, cannot sue individually. The reference to the plaintiff in the body of the contract is that Cavalliotis has sold to "P. N. Gray & Co., Inc., of 6 Hanover street, New York, *acting as agents* for Picard & Co., Zurich." There are strong authorities for holding that at common law a contract in such form is the personal contract of the agent, upon which he may sue and be sued in his own name. Albany, etc., Co. v. Lundberg, 121 U. S. 451, 54, 7 Sup. Ct. 958, 30 L. Ed. 982, and cases therein cited.

By the Code of Civil Procedure of the state of New York it is provided:

"Every action must be prosecuted in the name of the real party in interest, except that an executor or administrator, a trustee of an express trust,

or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted. *A person*, with whom or *in whose name, a contract is made for the benefit of another, is a trustee of an express trust*, within the meaning of this section." Section 449.

Whether considered as a personal contract or a contract with an agent, the defendant cannot be relieved from liability. If the former, the recovery is payable to the agent personally; if the latter, it is payable to him as agent for Picard & Co. In Considerant v. Brisbane, 22 N. Y. 389, the plaintiff sued upon notes payable to "V. Considerant, as executive agent of the company, Bureau, Guillon, Godau & Co." The court held, in overruling a demurrer:

"Before the Code, I think, the remedy at law, upon an express contract of this character, must have been enforced in the name of the plaintiff; but that, if there was any doubt upon this subject, the plaintiff clearly falls within that description of person who, by the 113th [now 449th] section of the Code, shall be construed to be a 'trustee of an express trust,' and, as such, authorized to sue."

This was followed by Albany, etc., Co. v. Lundberg, supra, wherein the contract began, "I, Gustaf Lundberg, agent for N. M. Hoglund's Sons & Co., of Stockholm, agree to sell," and the agreement was signed by Lundberg merely, in his own name. Upon the authority of Considerant v. Brisbane, the court, through Mr. Justice Gray, stated:

"The case, then, stands thus: If the agreement to sell is an agreement made by Lundberg personally, and not in his capacity of agent of the Swedish firm, the price is likewise payable to him personally, and the action on the contract must be brought in his name, even at common law. If, on the other hand, the agreement must be considered as made by Lundberg, not in his individual capacity, but only as agent and in behalf of the Swedish firm, and for their benefit, then the price is payable to him as their agent, and for their benefit, in the same sense in which an express promise to pay money to him as the agent of that firm would be a promise to pay him for their benefit, and therefore, by the law of New York, which governs this case, an action may be brought in his name. In either view, this action is rightly brought."

In Pitney v. Glens Falls Ins. Co., 65 N. Y. 8, it was held that, where an insurance policy was effected by an agent for a principal known to the insurer, but not named in the policy, the agent became trustee of an express trust with whom a contract is made for the benefit of another.

Even if the complaint does not specifically allege that the plaintiff is suing as trustee of an express trust, the contract is annexed to the complaint and made a part thereof, and specifically characterizes the plaintiff as agent or trustee for Picard & Co. and gives it standing in this court. In Schipper v. Milton, 51 App. Div. 522, 64 N. Y. Supp. 935, affirmed Smith v. Milton, 169 N. Y. 583, 62 N. E. 1100, it appeared that the contract in suit read, "sold for account of Messrs. Smith & Schipper, agents for W. F. Stevenson & Co., Manila." The court therein declared:

"It appears by the sold note, *which, by this allegation, is to be read as part of the complaint*, that the contract was made by the plaintiffs as agents for Messrs. W. F. Stevenson & Co., Manila, and that this firm was in fact the seller of this hemp to the defendants, and that the plaintiffs made this contract for them. This brings the case precisely within section 449 of the Code

of Civil Procedure, which provides that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted, and defines a trustee of an express trust as a person with whom or in whose name a contract is made for the benefit of another. Within the plain reading of this section of the Code, the plaintiffs, having made this contract for the benefit of W. F. Stevenson & Co., were entitled to maintain this action."

It must be held, therefore, that this action is properly brought by the plaintiff in its own name, without joining with it Picard & Co., its principal.

Whether or not the agreement between the plaintiff and defendant constitutes an assignment of the defendant's contract with the Dominion Sugar Company to the extent of 1,750 tons, or a sale by the defendant to the plaintiff of 1,750 tons of sugar, is not necessary to be determined in this action. In either aspect of the case, the plaintiff is entitled to recover, and the measure of damages is the same.

[2] This contract was assignable under the laws of this state. Section 41, Personal Property Law (Consol. Laws, c. 41). The general rule is that an executory contract, not necessarily personal in its character, which can, consistent with the rights and interests of the adverse party, be sufficiently executed by the assignee, is assignable, in the absence of agreement to the contrary in the contract. Quinn v. Whitney, 204 N. Y. 363, 97 N. E. 724; New York Bank Note Co. v. Hamilton Co., 180 N. Y. 280, 73 N. E. 48; Janvey v. Loketz, 122 App. Div. 411, 106 N. Y. Supp. 690.

Viewing the contract between the plaintiff and defendant (Exhibit B annexed to complaint) as an assignment pro tanto of the contract between the defendant and the Dominion Sugar Company, the assignor is held to have contracted that he will do no act to deprive the assignee of his rights under the assigned contract. Eaton v. Mellus, 7 Gray (Mass.) 556; Deering v. Farrington, 3 Keble, 304; Williston, Contracts, 849; 5 Corpus Juris, 968.

In Hinkel Iron Co. v. Cohn, 229 N. Y. 179, 184, 128 N. E. 113, a corporation of which defendant was president assigned to plaintiff a certain sum out of a designated payment to become due the corporation under a contract with the city of New York. The assignment was not filed. The corporation received the money and paid but a part thereof to the plaintiff, and the defendant, as president, withdrew the balance and applied it to the uses of the corporation. The corporation being bankrupt, action was brought against the defendant. Upon demurrer it was stated:

"The violation by a trustee of a trust relationship subjects the trustee to a personal liability thereafter by way of compensation or indemnification which the beneficiary may enforce. The defendant, with knowledge of all the facts, participated in and accomplished the conversion and misappropriation. He therefore is liable to the plaintiff for the amount converted."

The defendant, having deprived plaintiff of his rights under the agreement, is liable.

But there is nothing in the conduct of the parties prior to the action to indicate that the plaintiff has accepted the theory of an assignment of the contract in contradistinction to a sale of 1,750 tons of sugar. Indeed, the defendant claims that all the acts of the parties subsequent to the making of the contract indicate that it was assumed to be a sale by both parties. The contract having been set forth, the rights of the parties must be determined by the terms of that instrument, so far as they are dependent upon it. Greef v. Equitable Life Assur. Soc., 160 N. Y. 19, 29, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659; Bogardus v. N. Y. Life Ins. Co., 101 N. Y. 328, 4 N. E. 522.

[3] The plaintiff is entitled to relief upon any theory upon which his complaint states a good cause of action. Appleton v. Citizens' National Bank, 190 N. Y. 417, 422, 83 N. E. 470, 32 L. R. A. (N. S.) 543, affirmed 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443; Exchange Bank v. Hubbard, 62 Fed. 112, 10 C. C. A. 295, 163 U. S. 690, 16 Sup. Ct. 1202, 41 L. Ed. 317. Viewing this as a sale, the defendant, by releasing the Dominion Company from its obligation to deliver 2,000 tons of sugar, effectually put it out of his power and admittedly made it impossible for him to perform his contract with the plaintiff.

[4] Where one party to an executory contract prevents the performance of it, or puts it out of his own power to perform it, the other party may regard it as terminated and demand whatever damage he has sustained thereby. Lovell v. St. Louis Mutual Life Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423; American Loco Co. v. Harris, 239 Fed. 234; Simon v. Etgen, 213 N. Y. 589, 107 N. E. 1066; Patterson v. Meyerhofer, 204 N. Y. 96, 100, 97 N. E. 472; Union Ins. Co. v. Central Trust Co., 157 N. Y. 633, 644, 52 N. E. 671, 44 L. R. A. 227; Carnes v. Bassick, 187 App. Div. 280, 175 N. Y. Supp. 670. Plaintiff has therefore brought an appropriate action.

[5] Before passing to the question of damages, the affirmative defense must be considered. It is claimed by the defendant that an embargo was placed upon the exportation of sugar from Canada by the Canadian government, and that this embargo excused the Dominion Company from performance of its contract with the defendant, and therefore excused the Dominion Company and the defendant from delivering any sugar to the plaintiff. It is a general rule that, where performance of a contract is suspended by an official act of the government for a material length of time, execution of the contract is entirely excused. A government embargo placed upon the exportation of a commodity would be a defense to an action upon the contract involving the commodity. Roxford Knitting Mills v. Moore & Tierney (C. C. A.) 265 Fed. 177, 11 A. L. R. 1415; Mawhinney v. Millbrook Woolen Mills, Inc., 231 N. Y. 290, 132 N. E. 93.

But this relates to embargo or governmental interference by the government of the country in which the contract was made and in which it was to be performed. Foreign embargoes are ordinarily not an excuse for nonperformance. Krulewitch v. National Importing Co.,

195 App. Div. 544, 186 N. Y. Supp. 838; Richards v. Wreschner, 174 App. Div. 484, 156 N. Y. Supp. 1054, 158 N. Y. Supp. 1129.

[6] Moreover, the contract with the Dominion Company provided:

"Should we have any trouble in getting shipment down in time from the Canadian refinery *the seller has the privilege of shipping from the New York refinery.*"

This clause rendered inoperative any defense concerning the embargo, because, where rendered impossible to perform in one place by action of the government, nevertheless it was possible to perform in the other. It is only where both alternatives are rendered impossible that a legitimate defense could be predicated upon an embargo.

[7] The Dominion Company, apparently, did not consider itself protected by the Canadian embargo; otherwise, it would not have paid $84,800 to be released from its contract. When the Dominion Company paid so large a sum of money as this, it was not a payment for the mere purpose of avoiding a lawsuit. It was a recognition of its obligation under the contract. The defendant cannot be permitted with the one hand to accept moneys for the release by him of the Dominion Company from performance of its contract, and with the other hand put forth a claim that the Dominion Company could not lawfully be held to the performance of the same contract.

In any aspect of the case, the plaintiff's damage is the difference between the contract price for the sugar and the market value. The reasonable market price deducible from the evidence is 14¾ cents per pound, this being the lowest market price testified to by any disinterested witness. Damages should be awarded upon that basis. And as sugar is a commodity, the price of which on any market day is readily ascertainable, the plaintiff should be allowed interest from the date of the breach of contract, viz. January 29, 1920. Faber v. City of New York, 222 N. Y. 255, 262, 118 N. E. 609.

The court reserved decision on the various items of documentary evidence, as to which objection was made. The court overrules the objection to the receipt of such evidence in every instance, and receives the exhibits in evidence, and gives the objecting party an exception to the ruling to be entered in the record.

The plaintiff's motion to dismiss the affirmative defenses alleged in the answer is denied, with the exception given to the plaintiff. Defendant's motion to dismiss the complaint is also denied, with exception given to defendant.

Findings accompany this decision, and the proposed findings submitted by the respective parties are marked "Granted" or "Refused," as the case may be.

Judgment may be entered accordingly.

## Findings of Fact and Conclusions of Law.

The parties to this action having filed with the clerk of this court a stipulation in writing waiving a jury, and consenting that the issues of fact herein may be tried and determined by the court without the intervention of a jury, the court to make special findings of fact here-

in, and an order having been entered herein accordingly, and said issues of fact having thereupon been tried before the court without a jury pursuant to said stipulation and order, and evidence having thereupon been taken, and the court, having heard the allegation and proofs of the parties, and having heard counsel fo the respective parties, does now make, pursuant to the directions of said stipulation and order, the following:

### Special Findings of Fact.

(1) The plaintiff is a corporation duly organized and existing under and by virtue of the laws of Delaware, and a citizen and resident of that state, and is engaged in the export trade, and acts, among other things, as agent for foreign principals in the purchase and shipment of various commodities.

(2) Defendant is a citizen and resident of Corona, county of Queens, and state of New York, and within the Eastern district of New York, and does a general trading and export business.

(3) The amount in controversy herein exceeds the sum of $3,000, exclusive of interest and costs.

(4) Picard & Co., of Zurich, Switzerland, is a copartnership composed of Christian Neuser Picard, Jules J. Picard, and Raphael Picard, all of whom are residents of the republic of Switzerland.

(5) The Dominion Sugar Company, Limited, is a Canadian corporation, and manufactures refined sugar at Chatham, in the province of Ontario, Canada.

(6) On August 22, 1919, the defendant entered into a contract with the Dominion Sugar Company, Limited, for the purchase of 2,000 tons of standard cane refined granulated sugar, American style, at 9½ cents per pound, net cash New York funds, in bond f. a. s. Steamer New York, N. Y., this being the contract set forth as Exhibit A of the complaint herein.

(7) On October 22, 1921, the plaintiff and defendant executed the paper in writing, Exhibit B, annexed to the complaint.

(8) At the time of the making of the aforesaid contracts, a ton, as mentioned therein, according to a general custom and usage in the sugar trade in the city of New York, meant a long ton, namely, a ton of 2,240 pounds. By like custom, the letters "f. a s.," used in said contracts, have a well-defined meaning, namely, they are an abbreviation of the term "free alongside steamer," and that term means that all costs and charges incident to placing the subject-matter of the contracts within reach of the steamer's tackle for loading were included in the sales price, and to be borne by the seller, and were so used in each of the contracts.

(9) The aforesaid contract between defendant and the Dominion Sugar Company, Limited, contained, among other things, clauses to the following effect: (a) Delivery of the sugar therein referred to was to be made part late January, 1920, and part the first half of February, 1920; and (b) that the contract was contingent on strikes, accidents, fire, and other delays beyond seller's control, and should the Dominion Sugar Company, Limited, have any trouble in getting the

subject-matter of the contract down in time from the Canadian refinery, it was to have the privilege of shipping from New York refinery.

(10) The aforesaid contract between plaintiff and defendant contained, among other things, a clause to the effect that it was contingent on strikes, accidents, fire, and other delays beyond seller's control.

(11) On or about the 29th day of January, 1920, and prior to the expiration of the time reserved by the Dominion Sugar Company, Limited, for the delivery of the subject-matter of the aforesaid contract between defendant and said Dominion Sugar Company, Limited, defendant, without the knowledge or consent of the plaintiff, entered into an agreement with said Dominion Sugar Company, Limited, whereby the aforesaid contract between him and said Dominion Sugar Company, Limited, was canceled and released in consideration of the payment by said Dominion Sugar Company, Limited, to defendant, of the sum of $84,800, United States currency; that prior to the 29th day of January, 1920, the Dominion Sugar Company, Limited, notified the defendant that it would not perform its contract; that the Canadian government refused to permit export of sugar, and that the defendant notified the plaintiff thereof.

(12) Plaintiff has duly performed all the terms and conditions of said agreement entered into between it and the defendant, on plaintiff's part required to be done or performed, and made due demand upon the defendant for the delivery of the sugar referred to in said contract, and also demanded from the defendant payment of the sum of $215,600, damages alleged to have accrued by reason of defendant's alleged breach of said contract, but defendant has refused to deliver said sugar, or any part thereof, or make payment of said sum of $215,600, or any part thereof.

(13) Neither at the time when defendant settled with Dominion Sugar Company, as aforesaid, nor at any time prior thereto, did defendant notify the Dominion Sugar Company, Limited, of plaintiff's interest in said contract.

(14) Continuously from on or about the 27th day of January, 1920, until the early part of March, 1920, defendant represented to plaintiff that he had an offer of 1½ cents a pound from the Dominion Sugar Company, Limited, in settlement of all claims under his contract with said Sugar Company, of which alleged settlement offer he offered in turn to pay to plaintiff one-half cent a pound. This offer was repeatedly made by defendant to plaintiff, both immediately before and continuously after he had effected the aforesaid settlement with said Dominion Sugar Company, Limited, and at no time subsequent to the 27th day of January, 1920, did defendant disclose to plaintiff that he had fully discharged and abrogated his contract with said Dominion Sugar Company, Limited. Plaintiff's only knowledge of such discharge was gained from sources other than the defendant.

(15) On January 28 or 29, 1920, the defendant received an offer of 2 cents a pound from the Dominion Company, and settled accordingly; a release having been signed by him dated January 29, 1920.

(16) The telegram containing the 2-cent offer to defendant from the Dominion Company was dated January 27, 1920, being the same day

on which defendant himself was in Canada, and prior to the time when he stated to the officers of the plaintiff that he had received an offer of 1½ cents from the Dominion Company.

(17) The defendant at no time offered to make a settlement with the plaintiff on the basis of the 2 cents a pound which he had received in full settlement of his contract with the Dominion Company.

(18) During the latter part of January, 1920, and the first half of February, at the port of New York, N. Y., the fair market price of sugar, of the kind and quality and deliverable under the terms referred to in the aforesaid contracts, was 14¾ cents per pound, and the difference between the contract price and the market price of said sugar, at the time and place of delivery, amounts to the sum of $166,300, which amount the plaintiff has sustained as damages.

Upon said facts as found, the court hereby makes the following:

### Conclusions of Law.

1. The defense that plaintiff was not the real party in interest, and therefore not entitled to maintain this action, was not raised by the pleadings. It was therefore waived, and could not be properly raised upon the trial; but, even if such defense had been raised by the pleadings, it is not sustainable.

2. The plaintiff made the contract in its own name for the benefit of Picard & Co. It is therefore entitled to maintain this action in its own name under the provisions of section 449 of the Code of Civil Procedure.

3. The defendant, at a profit to himself, and without the knowledge or consent of the plaintiff, released the Dominion Sugar Company from its obligations to deliver the sugar which plaintiff was entitled to receive under its contract with the defendant. This constituted a breach of the contract between plaintiff and defendant, for which the defendant is liable in damages.

4. Judgment should be rendered for the plaintiff against the defendant for the sum of $166,300, together with interest thereon from the 27th day of January, 1920, and the costs and disbursements of this action, as demanded in plaintiff's complaint.

I accordingly, therefore, direct judgment for the plaintiff against the defendant for the sum of $166,300, together with interest thereon from the 29th day of January, 1920, and the costs and disbursements in this action, as demanded in the plaintiff's complaint.