PORT AUX QUILLES LUMBER CO., INC., Respondent, *v*. MEIGS PULP WOOD COMPANY, INC., Appellant.

First Department, March 2, 1923.

Sales — action to recover balance due on partial delivery of rossed pulp wood — contract provided that neither party should be liable for failure to perform which was caused by floods, strikes, acts of God, etc.— plaintiff's plant was operated in part by water power — if act of God rendered performance impossible, duty to perform did not revive on termination of conditions — unusual drought where plaintiff's plant was located was act of God — though drought was act of God, plaintiff was not relieved if contract could be otherwise performed — error to reject evidence by defendant that plaintiff could have purchased wood elsewhere to fulfill contract — error to instruct jury to disregard other means of performance.

In an action to recover the balance due on a partial delivery of rossed pulp wood, it appeared that the contract of sale provided that neither party should be held responsible for damages caused by delay or failure to perform, if such delay or failure was due to fires, strikes, floods, acts of God, legal acts of the public authorities or delays caused by public carriers which could not reasonably be provided against; that plaintiff's mill was operated, in part, by water power, and that during the summer while the contract was in course of performance there occurred an unusual and extraordinary drought in the section of the country where plaintiff's mill was located, which deprived it of the necessary water power to operate its plant.

*Held*, that if an act of God prevented the performance of the contract within the time specified therein, the plaintiff was relieved of its obligations entirely, and those obligations did not revive at the close of the existence of conditions attributable to an act of God, which was not until the time specified in the contract for delivery had terminated, and require the plaintiff to complete the contract.

An unprecedented and long-continued drought is an act of God on the same theory that an unusual supply of water called a flood is within that category.

But, assuming that there was a drought as found by the jury, and that such drought was an act of God, the plaintiff cannot be relieved from the performance of its obligations unless it is shown that it was impossible for it to fulfill its contract in any other manner than that contemplated by the contract.

The contract did not require that the plaintiff should be limited in its fulfillment to the use of wood prepared at its plant, and, therefore, it was error for the court to reject evidence to the effect that the plaintiff might have purchased wood from other sources and performed its contract.

It was error also to instruct the jury to disregard the possibility of other means of performance of the contract by the plaintiff, either by the installation of modern machinery in its plant or, if that were impracticable, by procuring the wood from another source through purchase.

APPEAL by the defendant, Meigs Pulp Wood Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of December, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Sparks, Fuller & Stricker* [*Leonard J. Reynolds* of counsel; *Frederick W. Sparks* with him on the brief], for the appellant.

*Elkus, Gleason, Vogel & Proskauer* [*Joseph M. Proskauer* of counsel; *Wesley S. Sawyer* and *Frank L. Weil* with him on the brief], for the respondent.

McAvoy, J.:

The contract sued upon obligates seller to deliver to the buyer, and the buyer to accept, seven to eight thousand cords of four-foot machine rossed pulpwood; the wood was to be delivered piled in tiers on boats of the buyer or those of the Cornwall Terminal Company in Oswego; deliveries to begin on August 1, 1919, and to continue in as nearly equal monthly quantities as possible until the entire quantity should be delivered, with the understanding that all wood sold should be delivered to the buyer on or before November 1, 1919. The process of rossing is the cutting away from the pulpwood the bark, knots and dirt thereof. The plaintiff did deliver to defendant prior to October 30, 1919, 1,043.9 cords of pulpwood at the contract price of $19.50 a cord, and in January, 1920, defendant paid plaintiff $5,000 on account of the wood that was delivered, and the balance of $15,365.05 is the sum for which the plaintiff brought suit, claiming as hereinafter outlined, that the delivery of the balance of the pulpwood provided for in the contract was excused by the inclusion of this clause in the contract:

" 8.— It is mutually understood and agreed that neither party hereto shall be held responsible for damages caused by delay

or failure to perform hereunder when such delay or failure is due to fires, strikes, floods, acts of God, legal acts of the public authorities or delays of [*sic*] defaults by public carriers which cannot reasonably be forecasted or provided against."

We are to consider whether article 8 relieved the plaintiff from its obligation by reason of the condition which the evidence shows and which was found by the jury existed at plaintiff's plant during August, September and October preceding the date of fulfillment of the contract.

The appellant asserts that the nature of the conditions which prevailed at plaintiff's plant during the period in question did not call into play any of the provisions of this clause of the contract, assuming that the contract can be entirely avoided if such conditions did exist there. But from the proof here, it might be found as a fact that there was such an unusual and unprecedented drought in the vicinity of the plaintiff's plant, which was partly operated by water power, as made it impossible to carry out the contract at that particular place, and if the product was under the contract solely for manufacture, and within the contemplation of the parties to be performed at that plant and the agreement for goods limited to plaintiff's product machined thereat, the plaintiff would be relieved of performance, provided that a drought of an unusual nature is included within the term " an act of God," and that such act of God is not delimited by association with the terms, " fires," " strikes " and " floods," which it may be assumed cannot reasonably be forecasted or provided against.

It is impossible to agree with the defendant that the seller is only relieved by the clause quoted from a failure to deliver the balance of the wood due under the agreement's terms until such time thereafter as the duration of the act of God persists and normal operations may be resumed. The context does not permit of that interpretation. The gist of inquiry is whether the failure to perform the balance of the contract by delivery of the wood was excused by a drought, since drought there was under the finding of the jury. That an unprecedented and an unusually long-continued drought is an act of God, on the same theory that an unusual supply of water called a flood is within that category, cannot be denied. While a flood and a drought are opposite conditions in effect, the one is not exclusive in thought to the other; but each connotes an act of God having to do with the frustration of an adventure by rendering the tangible means of performance impotent through a fortuitous interference with the water source or supply.

But even assuming that there was a drought and that such

544  Port Aux Quilles L. Co., Inc., *v.* Meigs P. W. Co., Inc.

First Department, March, 1923.          [Vol. 204

drought was an act of God, it must in addition be shown that the thing contracted to be done cannot by any means be performed. (*Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377; *Krulewitch* v. *National Importing & Trading Co., Inc.*, 195 App. Div. 544.)

Hardship and expense or loss to the party required to perform will not be considered, nor will the uselessness of the result to the other be regarded. The act of God, as Mr. Justice Page says in *Woodruff* v. *Oleite Corporation* (199 App. Div. 773), is one " which exempts from liability " because it " operates without any aid or interference of man, and when the loss occasioned is the result in any degree of human aid or interference, or if an act of human negligence contributed to the injury, or, though the injury proceed directly from natural causes, if it might have been avoided by human prudence and foresight, it cannot be considered the act of God." It seems obvious that even though this drought be an act of God and this provision of the contract for exemption be not limited to floods and may be abrogated entirely upon the happening of an event in the nature of an act of God, other than those mentioned specifically, nevertheless, it is not shown, as the language of the contract recited that the catastrophe which caused the failure to perform was not such as could not have been provided against, in so far as this contract was concerned, by the use of other means of manufacture or production, or the procurement of the commodity to fulfill the terms of the contract at some other place.

It may be that in certain contracts their inherent nature shows that it was contemplated by the parties when they were made that their fulfillment would be dependent upon the continuance or existence, at the time for performance, of certain things or conditions essential to their execution. Then in the event they cease, before default, to exist or continue, and thereby performance becomes impossible without the promisor's fault, the contractor is, by force of the implied condition to which his contract is subject, relieved from liability for the consequences of his failure to perform. (*Harmony* v. *Bingham*, 12 N. Y. 107; *People* v. *Bartlett*, 3 Hill, 570; *Dexter* v. *Norton*, 47 N. Y. 62; *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 id. 491; *Taylor* v. *Caldwell*, 3 B. & S. 826.)

But this contract cannot be so construed. Even plaintiff pointed out to defendant where similar wood to supply the deficit might be obtained, but did nothing to obtain it for furnishing the means of its own performance.

The contract contains no provision that the logs should come from any particular tract or any particular part of Canada, although there is an indication that the wood should come from Canada,

because there is provision therein that, in the event that the seller should be required to comply with the official requirements as to the export of pulpwood from Canada, the buyer agrees to do such necessary things as will conform thereto. Nor is the seller limited in the manner in which the wood is to be obtained. The contemplation of the parties is not evidenced as requiring this wood at all events to be machined at plaintiff's plant. It must then have been error to remove from the jury the question whether the plaintiff might not have fulfilled the balance of the order by the simple installation of modern machinery in its plant, or if that were impracticable, whether it might not have procured the commodity from another source through purchase elsewhere.

Such evidence was offered and rejected, and the jurors were instructed to disregard the possibility of other means of performance of the contract.

The judgment and order, therefore, should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., PAGE, MERRELL and FINCH, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to appellant to abide the event.