of England, ¶ 1221; *People* v. *Bihler*, 154 App. Div. 618; affd., 210 N. Y. 592.)

I believe the judgment of conviction should be affirmed.

Judgment reversed and defendant discharged. Order to be settled on notice.

---

THADDEUS DAVIDS COMPANY, Appellant, *v.* THE HOFFMANN-LA ROCHE CHEMICAL WORKS, Respondent.

First Department, July 13, 1917.

Contract — option to cancel contract of sale under certain contingencies construed — effect of embargo by foreign countries on exportation of product.

A clause in a contract by a chemical company for the sale of carbolic acid, stating that " Contingencies beyond our control, fire, strike, accidents to our works or to our stock, or change in tariff, will allow us to cancel this contract or any part of the same at our option," does not relieve said company from liability on the ground that foreign countries from which it obtained its supply of carbolic acid have placed an embargo on its exportation since the outbreak of the war, especially where the purchaser offers to accept domestic carbolic acid.

The reasonable construction of the contract is to be found by applying to it the rule *ejusdem generis*, and the words " fire, strike, accidents to our works or to our stock, or change in tariff " must be held to limit and qualify the " contingencies beyond our control " and to confine the happenings which would justify the cancellation of the contract to those of a like nature to the ones enumerated, which do not include an embargo.

APPEAL by the plaintiff, Thaddeus Davids Company, from an order and determination of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 6th day of October, 1916, reversing a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, in plaintiff's favor.

*C. Parker Lattin* [*Albert Ritchie* and *Charles H. Young* with him on the brief], for the appellant.

*Otto V. Schrenk* [*Hans H. A. Meyn* and *S. Ralph Tiffany* with him on the brief], for the respondent.

DOWLING, J.:

In December, 1913, plaintiff and defendant entered into a contract in writing, prepared by defendant and submitted by it to plaintiff, which accepted it without change. This contract was as follows:

"THE HOFFMANN-LAROCHE CHEMICAL WORKS,
      "INCORPORATED.
            "NEW YORK, *December* 22/1913.
            *   *   *

"THADDEUS DAVIDS COMPANY,
      "New York City, N. Y.:

"GENTLEMEN.—We herewith confirm the sale to you of the following:

"Quantity:   Eleven Hundred Twenty (1120) Pounds.
"Article:   Cryst. Carbolic Acid Roche USP.
"Price:   7½c per lb., inclusive 280 lb. drums.
"Terms:   F.O.B. New York. Thirty days net, 1% 10 days.
"Delivery:   Over the year 1914.
"Remarks:   With protection against decline in price on any undelivered portion of this contract.

"Contingencies beyond our control, fire, strike, accidents to our works or to our stock, or change in tariff, will allow us to cancel this contract or any part of the same at our option.

"Thanking you for your order, we are
                  "Yours very truly,
"THE HOFFMANN-LAROCHE CHEMICAL WORKS,
"Accepted Dec. 26/1913                        C. P. SCHLICKE.
"THADDEUS DAVIDS CO.,
      "J. W. R. MERCKLE, *Prest.*"

In May, 1914, under the contract plaintiff ordered one drum of crystals containing 280 pounds which it received and paid for. In November, 1914, it ordered another drum of the same weight and received only 100 pounds thereof and thereafter respondent delivered no more goods under the contract, though repeatedly called upon so to do. Finally, on January 21, 1915, defendant flatly refused to furnish any more goods under the contract, stating that the governments

of European countries, whence it obtained its supply of carbolic acid, had placed an embargo on its exportation, and none had been received from Europe since the outbreak of the war and its stock was exhausted. It then proceeded to say: "Under these circumstances, we are obliged to avail ourselves of the option provided for in our contract that the contract might be terminated by us in case of ' contingencies beyond our control,' as we can no longer supply any Carbolic Acid. We regret exceedingly that we are compelled to exercise this option, but prevailing conditions preclude any other course. You are, therefore, formally notified that the balance of the contract entered Dec. 22, 1913, amounting to 740 lbs. will not be supplied by us and that said contract is hereby cancelled." In reply to this plaintiff offered to take domestic carbolic acid, but defendant refused to supply even that at the contract price and again stated that it could not "recognize further liability under the contract." Upon the trial defendant stood upon the contention that the clause in the contract providing for cancellation in case of certain contingencies covered the results of the European embargo and gave it the absolute right to cancel the contract. Its claim is that an embargo may be considered in the same general class as a tariff; but if not, the rule *ejusdem generis* does not apply where the specific words stated in the clause exhaust the *genus* and that as the specific words used in the clause exhaust the two classes therein enumerated, the words " contingencies beyond our control " must be given a meaning outside of the classes mentioned. The defendant, by the contract which it framed, signed and submitted for plaintiff's acceptance, upon the acceptance thereof by the latter created a duty or charge upon itself which it was bound to perform, because it had promised so to do and had not shielded itself by proper conditions and qualifications. (*Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377.) In the case at bar defendant had failed to provide in the contract against the contingency of foreign war and embargoes laid by foreign powers. An embargo cannot reasonably be likened to a change in a tariff. The former is a prohibition of exportation, and absolutely prevents the shipping of goods within its scope; the latter only affects the amount of import duty which the

dealer is obliged to pay. We think the reasonable construction of this contract is to be found by applying to it the rule *ejusdem generis*, and that the words " fire, strike, accidents to our works or to our stock, or change in tariff " (all of which events are or may be beyond the control of the parties) must be held to limit and qualify the " contingencies beyond our control," and to confine the happenings which would justify the cancellation of the contract to those of a like nature to the ones enumerated; which an embargo is not. We, therefore, believe that the cancellation of the contract by the defendant was unjustified and it is liable in damages therefor. The record is not entirely satisfactory as to the amount of damage which plaintiff sustained by reason of the breach, but there is some evidence, evidently given credence by the trial judge, which warrants the finding that on January 21, 1915, when defendant breached its contract and refused to deliver any more goods thereunder, the market price for carbolic acid crystals was one dollar per pound. This would have warranted a larger judgment than was awarded. The determination of the Appellate Term will, therefore, be reversed and the judgment of the Municipal Court reinstated, with costs to appellant.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concurred.

Determination reversed, with costs in this court and in the Appellate Term, and judgment of Municipal Court reinstated and affirmed.