HERX & EDDY, INC., Respondent, *v.* CHARLES A. CARLSON, Appellant.

First Department, October 31, 1924.

Sales — action by seller for breach of installment contract — contract for sale of cotton yarn provided for ten per cent delivery weekly — delivery of several installments was prevented by freight embargo — total amount undelivered including two installments not due was tendered when embargo was lifted — embargo does not excuse performance in absence of agreement therefor — complaint alleging said delivery in bulk of installments past due and installments not due is insufficient — Personal Property Law, § 126, does not relieve seller from pleading and proving compliance with contract as to installments which may be delivered after default — tender of total amount undelivered not good tender of installments not in default.

A complaint in an action by a seller to recover damages for the breach of an installment contract for the sale of cotton yarn is insufficient, where it alleges that the contract provided for the delivery of ten per cent of the yarn weekly; that

27

one installment was delivered; that default was made in the delivery of several subsequent installments due to the fact that a freight embargo was placed upon the shipment of cotton yarn; that as soon as the freight embargo was lifted all of the goods undelivered, including the two installments not then due, were shipped to the buyer; and that the buyer refused to accept the goods so shipped.

The existence of the embargo did not excuse the seller's failure to perform its contract and did not postpone the date of delivery in the absence of any stipulation in the contract covering such a contingency.

Section 126 of the Personal Property Law does not have any application to the facts alleged in the complaint. A seller of goods is still required to plead and prove that he has complied with the terms of the contract on his part as to the installments which may be delivered after a default, in order to establish a cause of action against the buyer for an alleged breach thereof in refusing to take the later offered installments.

The tender of the entire amount of yarn still remaining undelivered under the contract was not a performance of the contract according to the stipulations even as to the subsequently due installments, because a tender was not made of the exact amount of yarn which was not then due, and the buyer was not bound to sever the tender, reject what should not have been tendered and take what was due under the terms of the contract.

Appeal by the defendant, Charles A. Carlson, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of March, 1924, denying the defendant's motion for judgment, made after answer under section 476 of the Civil Practice Act and rule 112 of the Rules of Civil Practice, to dismiss the amended complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

*Whitman, Ottinger & Ransom* [*Colley E. Williams* of counsel; *William L. Ransom* with him on the brief], for the appellant.

*Murphy & Fultz* [*David L. Fultz* of counsel], for the respondent.

McAvoy, J.:

The motion for an order dismissing the complaint was made after answer pursuant to the provisions of section 476 of the Civil Practice Act and rule 112 of the Rules of Civil Practice, and was based upon the amended complaint, plaintiff's bill of particulars and the contract out of which the action arose.

The ground of the motion is that the amended complaint does not state facts sufficient to constitute a cause of action.

The plaintiff's bill of particulars and the contract are included in the moving papers as admissions under section 476 of the Civil Practice Act.

The allegations pertinent to the disputed law points are:

1. That in June, 1920, the plaintiff and the defendant made a contract in writing by the terms of which contract the plaintiff

agreed to sell to the defendant, and the defendant agreed to purchase of the plaintiff, fifty warps of cotton yarn at ninety-five cents per pound.

2. That by the terms of the said contract deliveries were to start from the mill at the rate of ten per cent weekly, beginning July 1, 1920, " with the option to the plaintiff of starting deliveries from the mill at any time plaintiff wished at the rate of 10% weekly."

3. That accordingly the plaintiff elected to begin shipments on June 18, 1920, on which date plaintiff shipped eight warps of said cotton yarn.

4. That between the dates of June 18, 1920, and August 12, 1920, no shipments were made upon the contract because of the existence of a freight embargo at the point of shipment.

5. That during the month of July, 1920, the plaintiff offered to ship to defendant cotton yarn of substantially the same character and quality as that stipulated for in the contract.

6. That on August 12, 1920, the said embargo was lifted and the total undelivered balance of the said contract, consisting of forty-two warps of cotton yarn, was shipped.

7. That the plaintiff thereupon advised the defendant of such shipment and the defendant refused to accept and pay for the said forty-two warps of yarn, and that the defendant's refusal to accept the same constituted a breach of the entire contract on the defendant's part.

The plaintiff thus sues for the breach of an entire installment contract and it appears upon the face of the complaint that the plaintiff was in default in making shipments under the said contract as to all of the installments referred to in the complaint as due prior to August 12, 1920.

After the eight warps were shipped on June eighteenth, there remained forty-two warps to be shipped, and if said shipments followed the ten per cent division of the whole order, they should have been made in these amounts and at about the following dates: Five warps about June 25, 1920, and thereafter five warps on July 2, 1920, July 9, 1920, July 16, 1920, July 23, 1920, July 30, 1920, August 6, 1920, August 13, 1920, and two warps on August 20, 1920.

The complaint concedes that no shipments were made between June 18, 1920, and August 12, 1920, and upon that date the plaintiff, instead of tendering five warps, demanded that the defendant accept the forty-two warps.

On August twelfth, the date upon which the plaintiff shipped the remaining forty-two warps which constitute the basis of this action, the time had elapsed for the tender of all but seven warps of the total of fifty. The plaintiff was in default on seven of the

weekly installments and then tendered the total unfilled portion of the contract at one time. All this appears upon the face of the complaint.

The existence of an embargo does not legally excuse plaintiff for failure to perform its contract and does not postpone the date of delivery, nor does it seem from the argument that plaintiff now relies on that excuse. But whether it does or not, the rule is established against the intimated assertion of that excuse in the complaint. That the existence of an alleged embargo does not legally excuse the plaintiff for its failure to perform its contract, and does not postpone the time for shipment or delivery in the absence of a stipulation in the contract covering such a contingency is the rule of law which has consistently been stated in the decided cases.

In Thaddeus Davids Company v. Hoffman-La Roche Chemical Works (178 App. Div. 855) the defendant had contracted to sell to plaintiff goods known as carbolic acid crystals. The contract contained a stipulation stating: " Contingencies beyond our control, fire, strike, accidents to our works or to our stock, or change in tariff, will allow us to cancel this contract or any part of the same at our option." This court stated the rule: " The defendant, by the contract which it framed, signed and submitted for plaintiff's acceptance, upon the acceptance thereof by the latter created a duty or charge upon itself which it was bound to perform, because it had promised so to do and had not shielded itself by proper conditions and qualifications. (Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377.) In the case at bar defendant had failed to provide in the contract against the contingency of foreign war and embargoes laid by foreign powers. * * * We, therefore, believe that the cancellation of the contract by the defendant was unjustified and it is liable in damages therefor."

Since the embargo did not excuse non-delivery of the shipments, we are compelled to conclude that the complaint is fatally defective, because it appears upon the face thereof that the plaintiff was in default without legal excuse as to all installments included therein except two, and as to them its tender if in time included goods not receivable or forwardable under the contract at the date of tender.

The plaintiff contended in the court below that inasmuch as the contract in suit was an installment contract it was a question of fact as to whether the circumstances of plaintiff's default were such as to require the defendant to accept delivery of the forty-two warps of yarn shipped on August 12, 1920. In support of that contention the plaintiff relied upon section 126 of the Personal Property Law (as added by Laws of 1911, chap. 571).

Section 126 of the Personal Property Law has no application whatever to the facts alleged by the plaintiff in the complaint. A seller of goods is still required to plead and prove that he has complied with the terms of the contract on his part as to the installments which may be delivered after a default, in order to establish a cause of action against the buyer for an alleged breach thereof in refusing to take the later proffered installments.

Under the common law in New York, if the seller of goods upon an installment contract defaulted in the delivery of one installment, the buyer could terminate the entire contract because of the seller's default.

The common-law rule was stated unequivocally in *Wolfert* v. *Caledonia Springs Ice Co.* (195 N. Y. 118), as follows: "In a contract for the sale of goods to be delivered in installments, a failure of the seller to deliver, or of the buyer to accept one installment, constitutes such a breach of the contract as will give the party not in default the right to rescind the entire contract."

Section 126, subdivision 2, of the Personal Property Law, in so far as pertinent to this case, reads as follows: "Where there is a contract to sell goods to be delivered by stated installments * * * and the seller makes defective deliveries in respect of one or more installments * * * it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

In other words, under the common law the seller's default on one installment gave the buyer the right to repudiate the entire contract, while under the statute above quoted it depends upon the circumstances of the seller's default as to whether the buyer can repudiate the entire contract, and if the circumstances are such that the buyer cannot repudiate the entire contract then the breach is severable, giving the buyer the right to compensation for the one default, but not a right to treat the whole contract as broken, and the buyer thus remains liable for goods timely tendered.

The tender of forty-two warps at the time alleged, and the duty of the seller under the terms of the contract, indicate a failure to perform according to the stipulations thereof, even as to any subsequently due installments, because a tender was not made of seven warps which were due, but of forty-two warps, most of which were overdue without legal excuse. The buyer was not bound

to sever the tender, reject what was non-tenderable and take what was due, and accordingly the complaint shows no breach of contractual duty by defendant.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint granted, with ten dollars costs, with leave to the plaintiff to serve an amended complaint on payment of said costs.

Clarke, P. J., Merrell, Finch and Martin, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to plaintiff to serve an amended complaint within twenty days from service of order upon payment of said costs.