Graham, Judge,
delivered the opinion of the court:
The plaintiff is suing to recover a sum which is admittedly due it. Its claim grows out of a sale to it of surplus war property, for which it paid the full amount of its bid. A small portion of the material was delivered to it, and, thereafter, the defendant, finding that it was unable to deliver the balance, notified plaintiff that the contract was canceled and that a credit had been given it for the undelivered portion of the goods at the purchase price. Plaintiff repeatedly requested the payment of this credit, but it was refused. Thereupon it sued in this court. It was entitled at least to a refund of this balance of the purchase money. Shanhouse v. United States, 61 C. Cls. 840; Brody v. United States, 64 C. Cls. 538, decided February 20, 1928; and Hummel, trustee, v. United States, 58 C. Cls. 489, 494.
In defense defendant has interposed fifteen counterclaims, involving unsettled and contested matters in each case, as it claims, between it and the plaintiff. Each counterclaim grows out of a sale or attempted sale of surplus war material. It is to be noted that each one is in itself a lawsuit.
The purchase involved in the plaintiff’s claim was made on March 10,1920, and the rescission of the sale was on April 18, 1921. The sales in 12 of the counterclaims were made between August 30, 1920, and June 25, 1921, one in July, 1921, and one in September, 1919. The plaintiff’s petition was filed on November 21, 1923; the defendant’s counterclaim on April 29, 1926. It will be seen that the greater number of these claims were over three years old at the time of the filing of plaintiff’s petition, and over five years old at the time of the filing of the counterclaim, and had been allowed to sleep in the department without any action being-taken against the plaintiff or any effort being made by action to collect them prior to this suit.
*608 Nearly all of these alleged sales were effected through the-medium of advertisements, submission of bids, and acceptance thereof.
In each case the bidder, the plaintiff in this case,, was required before acceptance to deposit 10% of the purchase price with the defendant as “ liquidated damages ” in case of failure to carry out the contract of sale. As a net result of the deposits in some of these cases the Government collected and retained the equivalent of about $21,000.
A number of suits have been heard in this court involving a great variety of material and growing out of sales of surplus war supplies. These materials were stored at different points in the United States as the utilization of them required. Some of the supplies were perishable, some inadequately stored and protected, and nearly all were depreciating in value with the passing of time. They could not be used by the Government in time of peace. Congress therefore authorized their sale by passing the act of July 9, 1918, 40 Stat. 850, giving the President full power to dispose of all surplus material upon such terms as he deemed expedient, and, as we held in the case of Levy & Brothers v. United States, 63 C. Cls. 126, he was thus authorized to make these sales through the head of any executive department, to make regulations controlling them and naming terms and conditions, and to provide for adjustments of claims arising out of the sales when the circumstances warranted it.
Later, on July 11, 1919, 41 Stat. 104, c. 8, Congress authorized the Secretary of War to sell any surplus supplies upon such terms “ as may be deemed best.”
By virtue of these acts, and under authority of the President, the Secretary of War created the office of director of sales. Thereafter there was created a sales organization, known as the surplus property division, which operated as a branch of the Quartermaster Corps, and through this organization the quartermaster supply officer in charge of the surplus property was authorized to create local boards of sales control. Through these boards the sales of the property were made in different localities.
Any careful person of ordinary judgment having control of the sale of this property, and knowing its variety and *609 the conditions under which it was stored, would anticipate that in the great number of sales to be made there would necessarily be irregularities, mistakes, and disputes in connection with the deliveries of this scattered and diversified mass of material, and also that it would be necessary, on account of its perishable character and imperfect storage, to dispose of it as rapidly, and with as few complications, as possible.
To secure as speedy a disposal of the material as possible it was wisely provided in each of these sales that the purchaser, upon acceptance of the bid, should deposit 10% of the amount of his bid as liquidated damages and to guarantee performance. By liquidated damages is meant a certain sum agreed upon by the parties in advance which shall be paid or retained in lieu and satisfaction of any claim for damages which may arise out of a breach of the contract by the purchaser and a failure to take and pay for all or any part of the material. This provision for liquidated damages would enable the Government, on the failure of the purchaser to comply with his bid and to take and pay for the goods, to appropriate the 10% as liquidated damages for bReach and promptly sell the material, .instead of retaining it and waiting for the possible fulfillment of the contract or a suit for damages.
We hold and the court has found that the payment of 10% was in the nature of liquidated damages.
It was necessary, too, that authority should be given in cases where there were discrepancies in the identity, quantity, or deliveries of the goods sold to make reasonable adjustments and settlements covering the defaults, in order that the sales might be closed and the goods disposed of. The orders and Regulations issued by the President and the Secretary of War' under authority of the acts above cited confirm the foregoing views.
The counterclaims here are fifteen in number. In seven of them, on the failure of the plaintiff to pay for and take the goods after the payment of the 10% as liquidated damages, the defendant rescinded the contracts, Retained the 10%, and thereafter conducted alleged resales of the goods as the prop *610 erty of the plaintiff. In three of the counterclaims there were discrepancies and defaults in the delivery of the goods, and settlements were made by the authorized agents of the defendant, under which refunds in small amounts weTe made to the plaintiff. In one counterclaim there is no proof of any kind. In two there was a payment of $19.08 to plaintiff, the details of this settlement not being given; but so far as appears, the settlement was made by authorized representatives of the defendant. In one counterclaim a small balance is shown to be due by plaintiff to defendant. The refunds were made from the proceeds of the sales.
While counterclaims ar'e allowed to be interposed in suits of this character, the proof of them by the defendant must be full and satisfactory — that is to say, the defendant in the case of each counterclaim must prove its case. In the case of the alleged resales, it must prove that title passed to the plaintiff under the original sale, as it was supposedly acting as agent for plaintiff when it made the alleged resales; also, that the goods resold were the identical goods originally sold to the plaintiff; that it exercised Reasonable diligence, care, and judgment in making the alleged resales; and, in the cases of refunds, among other things, that the officers making the refunds were without authority to do so.
It is elementary that it is the policy of the courts to encourage settlements and, wherever it is possible, to uphold them in order to discourage litigation.
The courts will assume that an officer, in the performance of an official act, not only took all necessary preliminary steps required but acted within the circumference of his authority. There is a presumption in favor of the legality of his official act (United States v. Coe, 170 U. S. 681, 691), which must be overcome by satisfactory- proof that the officer exceeded his powers (Fouvergne v. United States, 18 How. 410), and the court has found that there is not satisfactory proof of want of authority upon the part of the officers making the refunds in this case.
It is well settled that in a case against a vendee for not taking and paying for property, the vendor has the choice ordinarily of one of three methods to indemnify himself: *611 “(1) He may store or retain the property for the vendee and sue him for the entire purchase price; (2) he may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale; or (3) he may keep-the property as his own and recover the difference between the market price at the time and place of delivery and the contract price.” Williston on Sales, vol. 2, sec. 555, p. 1385.
This statement of the l'aw has been often quoted with approval.
In seven of the counterclaims defendant rescinded the contract and retained the 10% of the purchase price paid as liquidated damages. The rescission of the contract, and retention of the 10% as liquidated damages would prevent defendant’s recovery. See Hickey v. United States, No. H-8, this day decided (post, p. 729). In this case the Government in argument and brief urged this view of the law. But, more .than this, by the rescission of the sale the vendor elected to keep the property as its own, and its remedy, under these circumstances, was to sue for the difference between the market price at the time and place of delivery and the coiitract- price. The court has found that there is no evidence of the market price.
Having rescinded the contract and made the property its own, it necessarily follows that a resale of the property was the resale of its own property and not the plaintiff’s, and any loss was its loss. But even assuming that it was the property of the plaintiff, and that the resale was made at-the latter’s risk and expense, it has been found that there was no satisfactory proof the property alleged to have been resold was the identical property originally sold the plaintiff, and that- the defendant in making the alleged resales did not exercise reasonable diligence, care, and judgment. We hold, therefore, that counterclaims 1, 2, 3, 4, 5, 6, 7, and 10, where the sales were rescinded, 10% retained, and resales alleged to have been made, can not be sustained and must be dismissed.
As to counterclaims 8, 9, and 11, which involve settlements and refunds, the defendant claimed that the officers making the refunds were without authority to do so. Aside from *612 the disposition of the court to uphold settlements, and the presumption that the officer making the settlements performed his duty, the court has found that there is no proof of the absence of the necessary authority. These counterclaims, therefore, can not be allowed and must be dismissed.
As to counterclaims 13 and 14, under which by a settlement $19.08 was paid to the plaintiff, there is no proof that this was improperly and illegally done.
As to counterclaim 15, there is no proof.
As to counterclaim 12, there is due by the plaintiff to the defendant the sum of $700, which should be deducted from the amount of plaintiff’s claim in this case, and the plaintiff given a judgment for the balance. It is so ordered.
GREEN, Judge; Moss, Judge; and Booth, Chief Justice, concur.