Williams, Judge,
delivered the opinion of the court:
This suit is brought for the recovery of $30,425.81 damages alleged to have been sustained by the plaintiff because of the failure of the United States to deliver to the plaintiff certain surplus Army property purchased by it at a regularly advertised sale of such property by the War Department.
On July 24, 1919, the War Department advertised for sale and solicited the public to submit bids on 14,615,442% yards, of grey gauze, 38% inches, 44 x 40, 8.20 yards to the pound, f. o. b. Atlanta, Georgia, and other points of storage. The bids of prospective purchasers were to be forwarded in special bid envelopes in time to reach the surplus-property division of the War Department, located in the Munitions Building, Washington, D. C., not later than 10.00 a. m., August 4, 1919, at which time and place the bids were to be opened.
Prospective bidders were invited to make an inspection of the goods offered for sale prior to submitting their bids, it being one of the conditions of the sale that no “ subject-to-inspection ” bids would be accepted.
Prospective purchasers were required to transmit with their bids certified check or other security equal to ten per cent of the total value of their bids. No bid for less than a minimum lot of 200,000 yards would be accepted.
On August 7, 1919, plaintiff’s bid for 1,165,442% yards was accepted at a total price of $109,482.75.
The balance of the 14,615,442% yards advertised for sale as aforesaid was awarded in varying amounts to sixteen other bidders.
Two conditions of the sale were that the goods should be removed by purchasers within thirty days of the acceptance of their bids and that all goods should be paid for before delivery.
Deliveries of the goods sold to the plaintiff and the sixteen other purchasers were made by the defendant upon the receipt of their requests for shipment. The distribution ivas made in the order of the “ first come, first served.”
It was discovered some time after the sale of the gauze in question that the Government did not have on hand and *381 could not deliver the total number of yards sold, the shortage being about 2% per cent of the total. This being the case the shortage naturally fell upon such bidders as were late in sending in their shipping orders and making final payments. The plaintiff was of this number, and consequently the Government was not able to make delivery to it of the total number of yards awarded upon'its bid.
The gauze awarded to the plaintiff was stored, 165,44214 yards at Boston, Massachusetts, and 1,000,000 yards at Atlanta, Georgia. The full amount stored at Boston was delivered and is not involved in this suit.
The plaintiff in its petition alleges there was a shortage of 427,569% yards in the delivery of the gauze purchased by it, and that by reason of the fact the plaintiff had contracted the resale of this gauze to its customers at a price not in excess of 11 cents a yard, which contracts it was required to fulfill with gauze purchased from other sources at a price greatly in excess of that amount, it sustained a loss of $30,425.81. In other words, the plaintiff contends that by reason of the failure to deliver to it the full amount of gauze purchased it was required to go into the open market and buy the quantity of gauze necessary to fill its contracts with its customers, and was compelled to pay therefor $30,425.81 in excess of the amount it had contracted to pay the United States for the same quantity and quality of gauze, and that the United States under its contract of sale is liable to reimburse the plaintiff for such loss.
In calculating the shortage in delivery of the amount of gauze purchased, the plaintiff omits the item of 245,873% yards of damaged gauze which was delivered to it on February 19,1920, at a discount of 25 per cent on the original contract price, and the item of 63,787 yards of gauze 36 inches, 22 X18, the equivalent of 27,529 yards of the gauze originally purchased, which the plaintiff accepted as a partial substitution of the gauze originally purchased.
These two items should be included and considered as deliveries on the 1,000,000 yards of gauze stored at Atlanta. This makes the actual shortage in delivery 156,798% yards. If the defendant is liable to the plaintiff in damages for nondelivery of the full amount of gauze purchased by the plain *382 tiff on the sale of August 7, 1919, such liability is limited to 156,798% yards, the actual amount of the shortage.
The plaintiff and other bidders on the 14,615,442% yards of gauze offered for sale by the defendant were notified by the terms and conditions of the sale printed on the bid forms on which their bids were submitted, that the amount of material sold might be 10 per cent more or less than scheduled. The Government could only sell such surplus property as it had on hand. It was only required to act in good faith and is not liable to the plaintiff for failure to deliver a portion of the goods which it did not possess. The plaintiff was charged with knowledge of these facts and can not recover because the defendant was unable to deliver the full amount of the gauze awarded to it on its bid. Mottram v. United States, 271 U. S. 15-19.
“ This court has several times held that claims growing out of bids for material which the Government was disposing of as surplus material can not be enforced against the Government where it appears that the material covered by the bid is not in the ownership or possession of the Government at the time the bid is made or accepted. The statute authorizes the sale of surplus material, and the authority of the officer is to sell what the Government owns and possesses at the time. Bidders must be held to a knowledge of any limitations upon the authority of Government agents.” Srere Brothers & Co. v. United States, 60 C. Cls. 994.
See also Schwarzenberg v. United States, 60 C. Cls. 898, and Hummel, Trustee, v. United States, 58 C. Cls. 489, 494.
The fact that the amount of the material offered for sale was only 2% per cent short of the actual amount on hand and in possession of the Government at the time establishes the good faith in which the Government acted in making its estimate of the amount available for sale. The plaintiff submitted its bid knowing the amount of gauze offered for sale might vary 10 per cent either more or less than shown by the inventories of such material. The variance was much less than plaintiff was advised it might be.
However, the plaintiff can not recover damages on account of the shortage in delivery in this case because no written contract was executed between the parties, as is required by section 3744 R. S., in order to bind the United States. Erie *383 Coal & Coke Corp. v. United States, 266 U. S. 518; Triad Corporation v. United States, 63 C. Cls. 151.
The defendant presents certain counterclaims in which it is claimed the plaintiff is indebted to the defendant in the aggregate sum of $7,364.81, as follows:
(1) The defendant claims there is due it the sum of $125.95 for storage charges on the undelivered part of the gauze purchased by the plaintiff on August 7, 1919, which had not been removed within 30 days of the date of sale. The only proof offered in support of this claim is the statement, rendered to the plaintiff May 9, 1925, by the Comptroller General (Finding XIY), in which this item is charged against the plaintiff. This is not sufficient to support the counterclaim. The rendering of this statement is no evidence whatever that the amount demanded was in fact due the defendant. It requires the same measure of proof to establish a counterclaim that is required in other claims. The defendant must prove its case by the introduction of satisfactory proof. This, has not been done, and the counterclaim for $125.95 for storage charges must be dismissed.
(2) It is claimed by the defendant as a second counterclaim that, the plaintiff purchased “ as is ” from the defendant a quantity of olive-green felt for the sum of $5,397.97 and paid for the same; that thereafter the zone supply officer erroneously made a refund to the plaintiff in the sum of $539.61 because of inferior quality of a portion of the goods purchased; and that such refund having been erroneously made, the amount thereof is now due and owing to the defendant from the plaintiff.
The facts and circumstances under which this refund was made to the plaintiff are not shown. No proof is offered by the defendant in support of its contention that the refund was illegally made and that plaintiff is liable to the defendant for the amount thereof. The defendant offered no proof whatever in support of its claim. All that is shown is that the refund was made and that its repayment by the plaintiff was afterward demanded. This does not prove the counterclaim.
When counterclaims of this character are interposed they can only be sustained by full and satisfactory proof. In *384 the absence of such proof, the presumption prevails that the officers of the Government acted within the scope of their authority in making the refund. Lamport Manufacturing Supply Co. v. United States, 65 C. Cls. 579.
For the reasons stated the defendant’s counterclaim for $539.61 must be disallowed.
(3) The third counterclaim presented by the defendant is for the recovery of $5,768.19, the amount of the discount .allowed to the plaintiff on the 245,8731/2 yards of damaged .gauze delivered in February, 1920.
The defendant contends that the War Department was without authority to allow this discount; that all the terms of the sale, including the price to be paid for the gauze awarded to the plaintiff, were definitely fixed by the acceptance of the plaintiff’s bid; and that such terms can not be changed by the War Department.
The question presented is not entirely free from doubt, but we think, under the decision in the case of American Stores Company v. United States, 68 C. Cls. 128, the department had the authority to give the plaintiff the discount in -question. The damaged gauze was still in the possession of the defendant. It had not been paid for by the plaintiff. The .contract of sale had not been, as yet, completely carried out.
The defendant had notified the plaintiff that the remainder of the gauze in its warehouses had been damaged from mildew and that consequently it could not make further deliveries on its contract with the plaintiff.
There yet remained undelivered to the plaintiff a large part of the goods purchased. The defendant was not able to supply the balance except with damaged goods. Under these circumstances an adjustment was made whereby the plaintiff accepted delivery of 245,873% yards of damaged gauze, on which it was allowed a discount of 25 per cent. The adjustment was certainly fair and reasonable, and the contract of sale not being fully carried out at the time it was made was, we think, one the War Department was authorized to make. The defendant’s third counterclaim will, therefore, be dismissed.
*385 (4) The defendant presents a fourth counterclaim for $33.57, the unpaid balance on 269,1861/2 yards of grey sheeting purchased by the plaintiff from the defendant August 23, 1919. The court in its findings of fact (Finding XII) has found this amount is due the defendant from the plaintiff.
(5) The defendant’s fifth counterclaim is for the sum of $897.49, the unpaid balance due the defendant on the purchase price of the gauze delivered to the plaintiff on its purchase of August 7, 1919. The court (Finding VIII) has found this amount to be due the defendant.
There is due the defendant from the plaintiff on counterclaims (4) and (5) the sum of $931.06, and the defendant is given judgment for that amount. .It is so ordered.
Littleton, Judge; Green, Judge; Graham, Judge; and Booth, Chief Justice, concur.