LittletoN, Judge,
delivered the opinion of the court:
Under the contract of July 24, 1930, the defendant sold and plaintiff purchased, and agreed to furnish shipping instructions and pay for within five years thereafter, or by July 24, 1935, the entire quantity of unused army trench shoes which the defendant had on hand. All of the trench shoes "owned by the defendant had been declared surplus property and were duly advertised for sale.. These shoes were stored in various places throughout the United States and, since the first contract with reference to the shoes was entered into on June 16, 1923, plaintiff had accurate information as to the approximate number of pairs of shoes stored at that time in Government warehouses at approximately one hundred different places throughout the United States. In the contracts between plaintiff and the defendant the total estimated quantity of shoes on hand in Government warehouses was 2,664,902 pairs. Based upon the records of the defendant compiled during the trial of this case, subsequent to February 1934, there is a slight discrepancy between the total number of pairs of surplus trench shoes in the possession of the United States and the number mentioned in the contracts with the plaintiff, but this is not material here. The facts show that the number of pairs of shoes covered by plaintiff’s contract of July 24, 1930, on hand at the time plaintiff ceased further performance by reason of the defendant’s action and conduct, as disclosed in the findings, in taking and using for its own purpose 223,897 pairs of shoes, was 1,094,037 pairs.
In the performance of its contracts plaintiff furnished shipping instructions and paid for 1,651,163 pairs of shoes at prices ranging from $1.55 to $1.60 a pair, according to *186 its agreements. Plaintiff was at no time in default under its contract of July 24, 1930, involved in this case. Plaintiff’s contract had more than two years to run at the time of the alleged breach thereof by the defendant in April 1933 in taking for its own use 223,897 pairs of shoes from the stock sold to plaintiff and its refusal to furnish plaintiff with any information as to the number of pairs of shoes taken, the sizes and widths thereof, and the places from which removed. We think it is clear that this was a breach of the contract by the defendant which entitled plaintiff to cease further efforts to perform and to demand compensation for whatever damage it had sustained by reason thereof. The measure of plaintiff’s damages under the rule of law applicable to cases of this kind is the difference between the fair and reasonable market value of the shoes on hand at the time of the defendant’s delivery of the 223,897 pairs of shoes to itself, which occasioned the breach of the contract, and the contract price. United States v. Burton Coal Co., 273 U. S. 337. The great preponderance of the competent evidence of record establishes beyond question that the fair and reasonable market value of the 1,094,037 pairs of shoes on hand and undelivered at the time of the defendant’s breach of the contract in 1933 was at least $2 a pair. A number of witnesses well qualified to testify as to the fair market value of these shoes were called and testified with reference to the matter. Practically all of them had bought large quantities of these shoes from plaintiff which they had used or resold and they were thoroughly familiar with the market value, the condition and the wearing quality of the shoes. The fair market value in 1933 for the entire quantity of shoes involved in the case was fixed by these various witnesses at from $2 to $2.50 a pair. These witnesses all testified that the shoes purchased by them from plaintiff were satisfactory and that they had given excellent service when worn under the most adverse conditions. Any shoes found to be defective were replaced by plaintiff. At the time of the defendant’s breach plaintiff made an investigation of the cost of similar shoes from persons or concerns able to supply the same and found that the cost of such shoes would be about $2.50 a pair. The shoes, for which plaintiff had *187 furnished shipping instructions and paid for, were sold by it at prices ranging from approximately $2 to $2.98 a pair.
In August 1933 while the defendant was removing from places of storage shoes which had been sold to plaintiff, and using for its own purpose a large number of pairs of shoes in the medium or popular range of sizes and widths, plaintiff received an order from one of its customers for about 10,000 pairs of shoes at $2 a pair for immediate shipment. Upon inquiry of the defendant plaintiff was advised that only approximately 7^000 pairs of these shoes could be supplied from the designated place of storage. The reason why this order could not be filled from the place of storage from which the customer had ordered shipment was that the defendant had withdrawn from that point of storage for its own use shoes of the sizes and specifications covered by the purchase order received by plaintiff. Plaintiff lost this contract.
The shoes covered by plaintiff’s contract were sold to it f. o. b. place of storage and it was necessary, in order for plaintiff to be able to sell these shoes and fix the price thereof to its customers, that the information furnished it under its contract remain accurate as to the number of pairs of shoes, and the sizes and widths on hand at each point of storage. The defendant was without authority to take • any action which would make it difficult or impossible, either for the plaintiff or itself, to perform the contract in accordance with its terms. Where one party to a contract prevents its performance, or puts it out of his own power to perform it, in accordance with its terms, the other party may regard it as terminated and demand whatever damages he has sustained thereby. Lovell, et al. v. St. Louis Mutual Life Insurance co., 111 U. S. 264. In Anvil Mining Co. v. Humble, 153 U. S. 540, 551, the court said: “ ‘If the jury find from the evidence that the plaintiffs were in good faith endeavoring to carry out and perform said contract according to its terms, and the defendant wantonly or carelessly and negligently interfered with and hindered and' prevented the plaintiffs in such performance to such an extent as to render the performance of it difficult, and greatly decrease the profits which the plaintiffs would otherwise have made, *188 then and in such case such interference was unauthorized and illegal and would have justified the plaintiffs in abandoning the contract, and would have entitled them to recover such damages as they actually suffered by being hindered and prevented from performing such contract.’ * * * Whenever one party thereto is guilty of such a breach as is here attributed to the defendant, the other party is at liberty to treat the contract as broken and desist from any further effort on his part to perform; in other words, he may abandon it and recover as damages the profits which he would have received through full performance.” See Roehm v. Horst, 178 U. S. 1; Lovell et al. v. St. Louis Mutual Life Insurance Co., supra; Gray & co. Inc., v. Cavalliotis, 276 Fed. 565, 570. “In promise for an agreed exchange a promissor is discharged from the duty of performing his promise if substantial performance of the return promise is impossible because of the non-existence, destruction, or impairment of the requisite subject matter or means of performance.” Restatement of the Law of Contracts Par. 281, p. 415.
There is no merit in the contention of counsel for the defendant that the contract was divisible. This contention was made on demurrer and was overruled. The entire quantity of unused trench shoes was offered for sale and sold to the plaintiff as a whole, whether the quantity on hand was within reasonable limits more or less than the estimated quantity stated in the proposal and in the contracts. This contention of the defendant is based upon the fact that a price of $1.55 a pair was fixed in the contract involved in this suit. But the fixing of a price per unit for the ascertainment of compensation as a whole does not render a contract severable. Moreover, the contract of July 24,1930, was entered into on the same basis as previous contracts between the parties and in the prior contracts the unit price a pair for the entire quantity of shoes sold was changed from time to time, showing clearly that the entire quantity of unused trench shoes was being sold as a whole rather than by the pair. See Purington Paving Brick Co. v. Metropolitan Paving Co., 4 Fed. (2d) 676. It is obvious *189 from the nature of the transaction, the large quantity of shoes being sold, and the fact that the lot contained a very large number of very small and very large sizes that if the transaction had been a purchase and sale by the pair different unit prices a pair would have been fixed or the shoes would have been grouped as to sizes and widths and different unit prices a pair specified for each group.
The defendant makes some additional contentions to the effect that plaintiff rather than defendant breached the contract by failing to furnish shipping instructions for the entire quantity of the shoes covered by the contract; that the appropriation by the defendant for its own use of a portion of the shoes sold to plaintiff did not constitute a breach of the contract entitling plaintiff to damages; that plaintiff can not recover because it did not minimize its damages by furnishing shipping instructions for the remainder of the shoes accompanied by a tender of payment, and that, in any event, the plaintiff cannot recover because the market price of the shoes at the date of the breach in 1933 was less than the contract price therefor. We think these contentions are without merit in this case. In view of the facts established by the record and what has been said above, it is unnecessary further to discuss these contentions.
By reason of the defendant’s breach of the contract, plaintiff is entitled to recover $492,316.65.
Plaintiff also seeks to recover $25,000 paid to defendant at the time of execution of the contract of July 24, 1930, in compromise and full settlement of all claims and counterclaims, and matters growing out of the contract of June 16, 1923, as supplemented on February 19, 1924, and August 6, 1926. But wre are clear that this payment cannot be recovered as an item of damages for breach of the contract of July 24, 1930. It had no connection whatever with the performance or non-performance of the contract involved in this suit. It was paid in compromise and full settlement of all matters and controversies existing between the parties at the time, which arose under the prior contracts.
The last item of plaintiff’s claim is for $64,663, outlay for expenses of its sales organization in the performance of the *190 contract involved in this suit to the date of breach thereof by the defendant. We think it is clear that this item cannot be allowed. In certain cases losses arising from expenses incurred in the performance, or in preparation of performance, of a contract with the Government may be included in the measure of damages for a breach thereof by the defendant. United States v. Behan, 110 U. S. 338, 339. Whitbeck, Receiver, v. United States, 17 C. Cls. 309. But the rule applied in those cases is not applicable here. Plaintilf performed no service and furnished no material or equipment to the United States. This was a sales contract in which the relation between the United States and the plaintilf was that of seller and purchaser. The property constituting the subj ect matter of the contract was purchased by plaintiff for resale and the Government cannot be held liable for any expenses incurred by plaintiff in carrying on its business of selling the shoes for which it furnished shipping instructions and paid for, unless it be shown that some portion of the outlay in expenses was incurred in respect of and directly related to that portion of the contract remaining unperformed at the date of breach. In other words, it is incumbent upon plaintiff to prove that it sustained an actual loss by reason of the expenditures and the extent thereof which was directly attributable to a breach of the contract by the defendant. This has not been done. It was understood by both parties at the time the contract was entered into that the shoes were being purchased by plaintiff for resale. It was for this reason that plaintiff was given five years within which to perform. It certainly knew that it would be necessary for it to incur expenses in carrying on its business of reselling the shoes. In doing this it was performing no service for the Government. Judgment in favor of plaintiff for these expenses would simply be awarding it increased profits on the shoes shipped by the defendant and paid for by the plaintiff. Clearly this cannot be done. We have held that plaintiff is entitled to recover the difference between the market price of the shoes on hand when defendant breached the contract in the manner hereinbefore stated, and the contract price *191 thereof. This amount in circumstances of this kind is the just measure of damages to which the plaintiff is entitled.
There remains to be considered the counterclaims made by the defendant. Counterclaims numbers 1 and 2 for $226,-463.47 and $137,916.23, respectively, present substantially the same question, to-wit, whether the Local Board of Sales Control had authority and acted within its jurisdiction in making the adjustments disclosed by the facts. The defendant claims that the Board exceeded its authority and jurisdiction. We are of opinion that there is no merit in this contention and that the counterclaims, upon the facts, must be dismissed.
The Secretary of War had statutory authority to sell the surplus supplies upon such terms as might be deemed best and he had authority to make any adjustments that were justified by the facts in the interest of fair dealing. It is obvious that the Secretary of War could not personally handle the great number of cases and controversies arising from the sale of great quantities of surplus property, and it was only right and proper that he should establish in his department some organization or means whereby these controversies could be thoroughly and adequately investigated and determined. This he did through the office of the Quartermaster General of the Army and the creation of the Surplus Property Division of the War Department, the Local Board of Sales Control, and the Board of Contract Adjustment. The Local Board of Sales Control was created and acted under authority of the Secretary of Whir. Under the rules and regulations of the War Department the Board of Sales- Control acted within its jurisdiction and authority In making the decisions and adjustments disclosed by the facts found with reference to both of these counterclaims. In American Stores Co. v. United States, 68 C. Cls. 128, this court said: “That the authority of the Secretary of War under the Act of July 11, 1919, in the sale of surplus supplies, ‘upon such terms as may be deemed best’, was more than that of a mere sales agent, and a refund to a vendee in accordance with the custom of the trade on goods not yet resold by *192 it, or the difference between the price previously agreed to and paid and a lower price thereafter offered to purchasers, was within the Secretary’s authority, notwithstanding the absence of a benefit passing from the vendee.” United States v. Koplin, 24 Fed. (2d) 840; Jacob Levy & Bros. v. United States, 63 C. Cls. 126; Lamport Manufacturing Supply Co. v. United States, 65 C. Cls. 579; American Stores Co. v. United States, supra; and Silberstein & Son, Inc. v. United States, 69 C. Cls. 373.
Defendant’s counterclaim number 3 requires little discussion. It is based on the proposition that the fair market value of the number of pairs of shoes undelivered was 35 cents a pair at the date the plaintiff’s contract was breached by defendant. The record establishes and we have found as a fact that the fair market value of the shoes remaining undelivered at the date of defendant’s breach of the contract was $2 a pair. This counterclaim must therefore fall. The testimony of witnesses called by the defendant, and upon which the defendant relies in support of this counterclaim, cannot be given any weight in-view of all the other evidence in the record by witnesses better able and qualified to testify as to the fair market value of the property. Defendant’s witnesses did not, in expressing their opinion, give proper consideration to the essential elements constituting market price or value. Of all the witnesses called by the defendant, the one best qualified to testify as to the fair market value of the shoes in question was not questioned by the defendant with reference to the market value. He had purchased from plaintiff and handled as many as 200,000 pairs of the shoes in question and it does not appear from his testimony that he experienced any difficulty in the matter with reference to the condition or the wearing quality of the shoes.
Plaintiff is entitled to recover $492,316.65. Judgment in its favor for that amount will accordingly be entered. It is so ordered.
Whaley, Judge; Williams, Judge; GreeN, Judge; and Booth, Chief Justice, concur.