Booth, Chief Justice,
delivered the opinion of the court:
This is a patent case. The plaintiff filed an amended petition on November 24,1933. The defendant filed a demurrer to same December 12, 1933. The case came on for argument before the court upon the issues thus raised. The court on June 4, 1934, entered the following order:
This case coming on to be heard on the defendant’s demurrer to the plaintiff’s petition as amended, it is ordered this 4th day of June 1934 that said demurrer be and the same is overruled without prejudice.
It is further ordered that Commissioner Hayner H. Gordon, to whom the case has heretofore been referred, ascertain whether United States patent 1411115 was granted under the provisions of the Nolan Act of March 3, 1921, and report such fact to the court as well as all other facts relative to such issuance.
This order was entered and was not thereafter objected to, because it seemed essential to have the detail facts with respect to the proceedings leading up to and resulting in the issuance of plaintiff’s patent.
The material facts disclose the plaintiff to be a subject of Great Britain, and that on March 16, 1918, he filed in the British Patent Office an application for a patent on “Improvements in or Relating to Airplanes.” This application *410 was a provisional one and was on May 13, 1918, with complete specifications which were duly accepted on July 11, 1921, resulting in grant of patent #166184 on October 12,1921.
September 8, 1919, plaintiff filed in the United States Patent Office an application for letters patent for the same invention specified and claimed in his British patent. On March 28,1922, the United States Patent Office issued to him letters patent #1411115 upon said application. It is conceded by the plaintiff that the patent in issue is invalid under Section 4887, Bevised Statutes, because plaintiff’s application for a patent in Great Britain was filed more than twelve months before he filed an application for an American patent upon the same invention.
The petition alleges a right to sue predicated upon the act of Congress of June 25, 1910 (86 Stat. 851), as amended by the act of July 1, 1918 (40 Stat. 704), this court’s jurisdictional act in patent cases, setting up a cause of action under the provisions of what is known and to which we will refer as the Nolan Act.
The Nolan Act became a law on March 3, 1921 (41 Stat. 1313). It is a lengthy statute and, so far as pertinent to the present case, we quote the following:
That the rights of priority provided by section 4887 of the Bevised Statutes, for the filing of applications for patent for inventions and designs, which rights had not expired on the 1st day of August 1914, or which rights have arisen since the 1st day of August 1914 shall be, and the same are hereby, extended until the expiration of a period of six months from the passage of this act in favor of the citizens of the United States or citizens or subjects of all countries which have extended, or which now extend, or which within said period of six months shall extend substantially reciprocal privileges to citizens of the United States, and such extension shall apply to applications upon which patents have been granted, as well as to applications now pending or filed within the period herein: Provided, That "such extension shall in no way furnish a basis of claim against the Government of the United States: Provided further, That such extension shall in no way affect the right of any citizen of the United States, who, before *411 the passage of this act, was iona -fide in possession ox any rights in patents or applications for patent conflicting with rights in patents granted or validated by reason of such extension, to exercise such rights by itself or himself personally, or by such agents, or licensees, as derived their rights from it, or him, before the passage of this act, and such persons shall not be amenable to any action for infringement of any patent granted or validated by reason of such extension.
A patent shall not be refused on an application coming within the provisions of this act, nor shall a patent granted on such application be held invalid by reason of the invention having been patented or described in any printed publication or in public use or on sale in the United States prior to the filing of the application, unless such patent or publication or such public use or sale was prior to the filing of the foreign application upon which the right of priority is based.
The entire act appears in the appendix to this opinion.
The defendant insists that plaintiff’s American patent is invalid under Section 4887, Revised Statutes, notwithstanding the established fact that, so far as dates are concerned, the plaintiff comes within the provisions of the Nolan Act. The defense is rested upon a contention that plaintiff did not file or prosecute his application for an American patent under the Nolan Act, and that it was the duty of the plaintiff when he received his British patent on October 12, 1921, to specifically request of the Patent Office the benefits of the Nolan Act and comply with the established regulations of the Patent Office governing procedure following application for a patent under the same. Some of the regulations are commented upon in finding 5. All are made a part of Finding 5 by reference.
The regulations relied upon were promulgated on different dates and appear publicly in The Official Gazette of the Patent Office. Their contents exhibit in most instances instructions and prescribed methods of procedure imposed upon the proper officials of the office. A typical illustration is found in one regulation where if the applicant were given the benefit of the Nolan Act, Patent Office officials were to make a memorandum to this effect which should be entered upon the file wrapper of the application. Ob *412 viously the applicant was not to do this, and the failure .of the Patent Office to observe it could not prejudice the applicant’s right.
Too many regulations appear to discuss each one. It does appear, however, and the fact is not denied, that stamped plainly upon plaintiff’s patent application, put thereon by officials of the Patent Office, were the following words:
Attention is called to the fact that this application was not filed in the Patent Office within twelve months from thé date of filing the application for foreign patents.
Plaintiff’s application upon its face unmistakably disclosed that without the remedial provisions of the Nolan Act the same must be at once rejected. The established regulations promulgated subsequent to the passage of the Nolan Act could serve no other purpose, so far as herein available as a defense, than to put the Patent Office upon notice that the applicant was seeking a patent under that act.
The record we think establishes the fact that the Patent Office had knowledge and notice that the patent could not be granted except under the Nolan Act and that under judicial precedents long established this court must presume that the Patent Office officials discharged their duty. In the case of Lamport Mfg. Supply Co. v. United States, 65 C. Cls. 579, 610, cited in plaintiff’s brief, it is held:
The courts will assume that an officer, in the performance of an official act, not only took all necessary preliminary steps required but acted within the circumference of his authority. There is a presumption in favor of the legality of his official act (United States v. Coe, 170 U. S. 681, 697), which must be overcome by satisfactory proof that the officer exceeded his powers (Fouvergne v. United States, 18 How. 470) and the court has found that there is not satisfactory proof of want of authority ¡upon the part of the officers making the refunds in this case.
A defense additional to the one that plaintiff’s patent was not issued under the Nolan Act is predicated upon the first proviso to the same. This proviso reads as follows: "Provided, That such extensiqn shall in no way furnish a *413 basis of claim against the Government of the United States.” Tire Nolan Act is a reciprocal statute adopted by several countries, including the United States and Great Britain. It is a remedial act expressly intended to extend the period of limitation imposed upon foreign inventors seeking an American patent as provided in Section 4887, Revised Statutes. The existence of war conditions actuated its enactment.
It is most difficult to ascertain the intent of Congress in inserting into the remedial provisions of the act the above proviso. Congress in considering the enactment of the same pointed out its beneficial features to American inventors seeking foreign patents, and the impossibility of securing the same if American laws did not extend reciprocal privileges. Especial care was exercised to preclude the granted privileges from nullifying or interfering with existing patent rights under existing laws, both with respect to individuals and the Government.
By the second proviso in the act American citizens who were in bona -fide possession of any rights in patents, or applications for patents which conflicted with the new rights validated by the act, were to retain their rights of priority and the Nolan Act did not apply thereto. Sections 7 and 8 protect the Government from all suits for infringement which might arise out of the use by it of any foreign inventions or patents during the World War. Section 7 also precluded suits against the Government for the use of any patented invention belonging to an alien enemy. Section 6 protected rights of any person serving abroad during the war with the forces of the United States.
The act in all its provisions reflects an intent to extend a remedy essential because of war conditions, and at the same time precludes the extension granted from depriving those in possession of acquired and existing rights which the extension of time allowed would or might interfere with. The Government did not under the emergency of war have time for meticulous consideration of foreign patent rights.
*414 If Section 4887 of the Revised Statutes had not been amended by the Nolan Act, and the Government had used or caused to be used for it plaintiff’s foreign patent, no cause of action could be maintained for such user. This is admitted to be correct, and it is plain that the Nolan Act) did render the Government immune from suit if it had used plaintiff’s invention prior to and continued the use subsequent to the issuance to him of his patent by the United States Patent Office.
The issue then narrows to the question whether the first proviso of the Nolan Act in effect precludes the plaintiff from suing in this court under the act of 1910 as amended . by the act of 1918, supra, for an alleged infringement of the patent rights obtained by him under the Nolan Act, which acts of infringement are alleged to have taken place on June 30, 1930, almost nine years after the passage of the same, it being conceded that during the six months’ period allowed foreign inventors under the Nolan Act the Government was not in possession of and did not use plaintiff’s invention.
Prior to the enactment of the act of 1910 no inventor could sue the Government for the use of a patented invention unless it could be positively established that the facts of user by the Government were such as to legally justify the existence of an implied contract upon the part of the Government to pay for such user. Berdan Fire-Arms Co. v. United States, 156 U. S. 552; Société Anonyme des Anciens Etablissements Cail v. United States, 224 U. S. 309.
The act of June 25, 1910, supra, provided additional protection for owners of patents. This act is in the following language:
That whenever an invention described in and covered by a patent of the United States shall hereafter bo used by the United States without license of the owner thereof or lawful rights to use the same, such owner may recover reasonable compensation for such use by suit in the Court of Claims: Provided,' however, That said Court of Claims shall not entertain a suit or reward compensation under the provisions of this Act where the claim for compensation is based on the use by the United States of any article heretofore owned, *415 leased, used by, or in the possession of the United States: Provided further, That in any such suit the United States may avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise: And provided further, That the benefits of this Act shall not inure to any patentee, who, when he makes such claim is in the employment or service of the Government of the United States; or the assignee of any such patentee; nor shall this Act apply to any device discovered or invented by such employee during the time of his em-employment or service. (36 Stat. 851.)
The act, it is to be noted, expressly reserved rights to the Government in granting consent to be sued.
The act of July 1, 1918 (supra), need not be cited in full. It is sufficient to state that the act of 1910 confined the right to sue the Government in such cases only where it was established that the Government alone used the patented invention, and not in instances where the patented invention was “used or manufactured by or for the United States.” Government contracts frequently specified the use by the contractor of patented inventions for the use of which neither the Government nor the contractor possessed a license; hence, the amendment of 1918 extended the right to sue in cases coming within its terms.
We cite this legislation to disclose that in 1921, prior to the passage of the Nolan Act, the Government was subject to liability for the infringement of a patent under the conditions stated in the acts, and it is clear that if the Government had not protected itself against the acquirement of patent rights under the Nolan Act plaintiff’s suit would be maintainable under existing laws. Notice of this fact is attributable to Congress when the Nolan Act was passed.
It was essential, as noted, for the Congress to limit the right of patentees as against the Government; otherwise the right of priority extended under the Nolan Act would subject it to suits for infringement of patents absolutely invalid prior to the enactment of the same. The words of the proviso beyond doubt reflect an intention to pre- *416 elude one accorded rights under the Nolan Act from suing; tbe Government if the basis of the claim is found in the Nolan Act. When Congress said that the extension of time provided in the act shall in no way furnish a basis of a claim against the United States there was excluded from the legal incidents which attach to patent rights the right to sue the United States for the infringement of a patent granted and issued as plaintiff’s was.
This is so, we think, for of course infringement suits are rested upon valid patents, and the United States, as well as others, was privileged to use plaintiff’s invention prior to its issuance, and, as stated, a valid patent forms the basis of such a proceeding. The Government did not protect itself to more than a limited extent if the proviso, circumscribed its right to use plaintiff’s patent in case the user antedated the issuance of the patent and continued thereafter. If patentees may avail themselves of this) court’s jurisdictional acts in patent cases and sue for an infringement of a patent in cases where it is alleged the acts of infringement took place after the extension period had expired, seemingly express language would have been employed by Congress indicating such an intent. The language of the second proviso is definite and clear upon this precise point.
The Nolan Act amended Section 4887, R. S., and in so doing enabled an applicant to procure a patent when this right was not theretofore available. In an express way the Nolan Act created a limited but new form of patent monopoly. It accorded to inventors a new right, for a limited period of time it is time, but it was a new right, and obviously the right of an inventor to a patent is dependent upon positive law. Until the passage of the Nolan Act the plaintiff possessed no right to a patent monopoly of any character in the United States.
Congress having seen fit to create this new right upon provided conditions, it was within its authority to limit the scope of the acquired new right to any extent, and this it did. The limited right to sue the Government is, of course, conceded and there is nothing inconsistent in the granting of an individual right and exempting the Gov- *417 eminent from the legal consequences which flow from such a grant if unrestricted. The withholding of a remedy for acts of the Government is clearly within its power. The plaintiff points out the consequences that follow from denying a right to sue as herein contended for. Beyond a doubt, those called to our attention follow, but granting the argument of reasonableness and consequences its full weight according to law, we cannot reach a conclusion that they were unintended in view of the language used in the proviso. The Nolan Act is sui generis and embodied within its provisions is, we think, a manifest congressional intent to withhold from patentees under the Nolan Act the right to sue the United States.
The Richmond Screw Anchor Co. case, 275 U. S. 331, is different from the instant one. In that case the Supreme) Court held that the amendatory act of 1918 had the effect of depriving patentees and assignees of patent rights from suing contractors and manufacturers for the infringement of patent rights when they were using patented inventions for the United States. This case held that the effect of the act was to take away an existing legal right and confine suits for infringements of the character mentioned against the United States alone.
A portion of the opinion in the Richmond case (p. 345) which we utilize in part, reads as follows:
To accomplish this governmental purpose, Congress exercised the power to take away the right of the owner of the patent to recover from the contractor for infringements. This is not a case of a mere declared immunity of the Government from liability for its own torts. It is an attempt to take away from a private citizen his lawful claim for damage to his property by another private person which but for this Act he would have against the private wrongdoer. This result, if 3477 Rev. Stats, applies and avoids the assignment, would seem to raise a serious question as to the constitutionality of the Act of 1918 under the Fifth Amendment to the Federal Constitution. We must presume that Congress in the passage of the Act of 1918 intended to secure to the owner of the patent the exact equivalent of what it was taking away from him. It was taking away his assignable claims against the *418 contractor for the latter’s infringement of Ms patent. The assignability of such claims was an important element in their value and a matter to be taken into account in providing for their just equivalent. If section 3471 applied, such equivalence was impossible. (Italics supplied.)
What we have here is a “declared immunity of the Government from liability for its own torts.” The Nolan Act takes nothing away. The patentee is not in all respects deprived of rights against individual infringers under the conditions stated in the act. On the contrary, new rights are created which prior to the enactment of the same the plaintiff did not possess. The basis of his claim is the patent monopoly granted to him under the extension period provided in the act. To the Nolan Act and to it alone the plaintiff must look for whatever patent monopoly he has, and the court is bound to give effect to the positive language in the proviso, which can have no other meaning than to preclude the plaintiff from suing in this court upon the patent involved. It was the intent of- Congress when it used these words, “such extension shall in no way”, to render the Government immune from any cause of action predicated upon the Nolan Act and the only way this court can hold otherwise is to indulge in inferences and conjectures that Congress intended differently. This we think we may not do.
The plaintiff’s petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; and GeeeN, Judge, concur.
LittletoN, Judge, dissents.
APPENDIX
Nolan Act

Act of Mar. 3, 1921 (41 Stat. 1313; U. S. C., title 35, sec. 80):

That the rights of priority provided by section 4887 of the Revised Statutes, for the filing of applications for patent for inventions and designs, which rights had not ex *419 pired on tlie 1st day of August 1914, or which rights have arisen since the 1st day of August 1914, shall be, and the same are hereby, extended until the expiration of a period of six months from the passage of this act in favor of the citizens of the United States or citizens or subjects of ail countries which have extended, or which now extend, or which within said period of six months shall extend substantially reciprocal privileges to citizens of the United States, and such extension shall apply to applications upon which patents have been granted, as well as to applications now pending or filed within the period herein: Provided, That such extension shall in no way furnish a basis of claim against the Government of the United States: Provided further, That such extension shall in no way affect the right of any citizen of the United States, who, before the passage of this act, was bona fide in possession of any rights in patents or applications for patent conflicting with rights in patents granted or validated by reason of such extension, to exercise such rights by itself or himself personally, or by such agents, or licensees, as derived their rights from it, or him, before the passage of this act, and such persons shall not be amenable to any action for infringement of any patent granted or validated by reason of such extension.
A patent shall not be refused on an application coming within the provisions of this act, nor shall a patent granted on such application be held invalid by reason of the invention having been patented or described in any printed publication or in public use or on sale in the United States prior to the filing of the application, unless such patent or publication or such public use or sale was prior to the filing of the foreign application upon which the right of priority is based.
Sec. 2. (U. S. C., title 35, sec. 81.) That the time now fixed by law for the payment of any fee or for the taking of any action with respect to an application for patent, which time had not expired on August 1, 1914, or which commenced after August 1, 1914, is hereby extended until the expiration of one year from the passage of this act, without the payment of extension fees or other penalty in favor of the citizens or subjects of countries which have extended, now extend, or shall extend during a period of one year from the passage of this act substantially reciprocal privileges to citizens of the United States: Provided, That no extension herein shall confer such privileges on the citizens or subjects of a foreign country for a longer term than the term during which sum privileges are conferred by such foreign country on the citizens of the United States, but *420 nothing in this act shall give any right to reopen interference proceedings where final hearing before the examiner of interferences has taken place.
Sec. 3. (U. S. C., title 35, see. 82.) That no patent granted or validated by reason of the extensions provided for in sections 1 and 2 of this act shall abridge or otherwise affect the right of any citizen of the United States, or his agent or agents, or his successor in business, to continue any manufacture, use, or sale commenced before the passage of this act by such citizen, nor shall the continued manufacture, use, or sale by such citizen, or the use or sale of the devices resulting from such manufacture or use constitute an infringement.
Seo. 4. (U. S. C., title 35, see. 82.) That all applications for patent filed since August 1, 1914, and prior to June 15, 1920, which were executed by an agent of the applicant, and in which a petition, specification, and oath, signed by the inventor, or his executor or administrator, had been filed or shall have been filed within a period of one year from the passage of this act, and the patents granted on such applications, shall have the same force and effect as if the papers signed by the inventor, or his executor or administrator, had been filed on the date on which the papers signed by the agent were filed.
Sec. 5. (U. S. C., title 35, see. 84.) That all applications for patent filed since August 1, 1914, in which the oath was executed before or authenticated by a consular officer, or other representative qualified to administer oaths, of a Government acting in the interest of the Government of the United States, shall have the same force and effect as if said oath had been executed by the applicant before a consular officer of the United States.
Sec. 6. (U. S. C., title 35, see. 85.) That where an invention was made by a person while serving abroad, during the war, with the forces of the United States, civil or military, the inventor thereof shall be entitled, in interference and other proceedings arising in connection with such invention, to the same rights of priority with respect of such invention as if the same had been made in the United States, and where an application became abandoned or forfeited, during the time the applicant was serving with the forces of the United States, by reason of his failure to take action or pay a fee within the time now required by law, such action may be taken, or the fee paid, within six months from the passage of this act.
Sec. 1. (U. S. C., title 35, see. 86.) That no claim shall be made or action brought in respect of the use since Au *421 gust 1, 1914, up to the passage of this act, by the Government of the United States, or by any persons acting on behalf of, or under contract with, or with the assent of the Government of the United States or of governments or their representatives associated with the United States, under any patent rights owned in whole or in part since August 1, 1914, by an alien enemy, nor in respect of the use of any process during such period, -or the sale, offering for sale, or use, at any time, of any products, articles, or apparatus whatsoever manufactured during such period, to which such patent rights applied.
Sec. 8. (U. S. C., title 35, see. 87.) That nothing in this act shall affect any act done by virtue of the special measures taken during the war under legislative, executive, or administrative authority of the' United States in regard to the rights of an enemy, or ally of an enemy, as defined by the trading with the enemy act of October 6, 1917, in patents for inventions and designs.